## SWIFT & CO. v. UNITED STATES.
### No. H–101.

Court of Claims.
Feb. 17, 1930.

G. Carroll Todd, of Washington, D. C. (Albert H. Veeder, Henry Veeder, and Francis E. Baldwin, all of Chicago, Ill., and T. Hardy Todd, of Washington, D. C., on the brief), for plaintiff.

Fred K. Dyar and Frank D. Strader, both of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (C. M. Charest and Ottamar Hamele, both of Washington, D. C., on the brief), for the United States.

Holmes, Brewster & Ivins, of Washington, D. C., amici curiæ.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, GRAHAM, and GREEN, Judges.

GREEN, Judge.

This is a suit on a claim for the refund of income and profits taxes for the taxable year 1918, based on section 204(b) of the Revenue Act of 1918 (40 Stat. 1061), which provided that:

"If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, * * * any taxpayer has sustained a net loss, the amount of such net loss shall * * * be deducted from the net income of the taxpayer for the preceding taxable year; and the taxes imposed by this title [Income taxes] and by Title III [Profits taxes] for such preceding taxable year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252."

The plaintiff is the parent corporation of a large group of affiliated corporations engaged in the meat-packing business and kindred occupations. For the years 1918 and 1919, the plaintiff and affiliated corporations made a consolidated return of their net income for the purpose of assessment of income and profits taxes on the basis of the calendar year, and each of the group was assessed its share of the taxes for 1918, which it paid. The plaintiff does business nearly all over the world and, together with the affiliated corporations, in 1918 and 1919, made sales to the amount of over $1,000,000,000 each year.

The corporations which constituted the affiliated group in 1918 had a net income for that year of $39,465,221.11. The affiliated group consisted of about sixty corporations (the total number is not shown definitely) until November 30, 1918, at which time Libby, McNeill & Libby, a member of the group, dropped out and was no longer affiliated with any of the other corporations; the remaining fifty-nine corporations in the group continued until the end of that year, and throughout the year 1919.

On March 21, 1919, a corporation known as the Union Meat Company became affiliated with the plaintiff and the other members of the affiliated group, and remained a member thereof until June 2, 1919, at which time it was dissolved and its assets were acquired by the plaintiff.

For the calendar year 1919, the consolidated group, including the Union Meat Company during the period it was a member thereof, had a net loss of $24,534,929.44. In the consolidated return for 1919 it was sought to have this consolidated net loss deducted from the consolidated net income for the previous year, and to have the tax for 1918 redetermined in accordance with section 204(b) set out above. The Commissioner refused to make this deduction. Thereupon plaintiff filed a claim for refund, maintaining that it, and the corporations affiliated with it, had made an overpayment of taxes in excess of $8,000,000 for the year 1918, and specifying the amount of refund claimed to be due to each member of the affiliated group. The Commissioner denied the claim for refund, and plaintiff brings this suit to recover the amount alleged to have been overpaid by it for 1918.

The grounds of the denial of the refund were:

First, that plaintiff should have made its consolidated return on the basis of a fiscal year ending approximately November first of the years in controversy instead of upon a calendar year.

Second, that during the years 1918 and 1919 changes were made in the affiliated group or groups of which the plaintiff was the parent corporation, in that one corporation was separated therefrom in the year 1918 and one was added in 1919, and as a result thereof there were, in fact, three separate taxable groups, with the result that section 204(b) above quoted was not applicable.

The issue in the case is whether the refund was properly denied upon either of the grounds above stated.

As the second of these matters which constituted grounds for refusing the refund would prevent plaintiff from recovering anything whatever herein, the question as to whether the ruling thereon was in accordance with law will be first considered. In defendant's brief the contention on the part of the government is stated more at length, as follows:

" * * * that each time there is a change in an affiliated group a new taxpayer appears, a new tax status is created, a new tax return is required, and a new taxable period or 'year' is developed."

If this statement is correct, then, in the case at bar, there would be different taxpayers for the taxable years 1918 and 1919, and the group last formed would be the only one that sustained any loss in 1919. It follows that if defendant's contention on this point is sustained, the plaintiff and its affiliated corporations will derive no benefit from section 204(b). Upon this, counsel for both sides agree.

At the outset it should be noted that the principle for which the defendant now contends is contrary to the practice and procedure which the Revenue Bureau hitherto had uniformly followed. For more than ten years prior to the time when this controversy arose, the Revenue Bureau had both by regulation and application of the law held that a change in an affiliated group caused by the dropping out of one corporation or the addition of another, or both, did not end the existence of the affiliated group for the purpose of computing the tax, and had never held that by such changes in an affiliated group new and separate groups were thereby created for the purposes of taxation. This is shown by article 634 of the regulations, under the Revenue Acts of 1918, 1921, 1924, and 1926, which provides, in part, that:

"Where there are more than two corporations affiliated at the beginning of the taxable year, and due to a change in stock ownership (or control) [1] the affiliated status of one or more is terminated, but there remain at least two corporations affiliated during the entire year, the parent or principal corporation should file a consolidated return for the entire year, excluding from its return the income of the corporations whose affiliated status is terminated from the date of the change in stock ownership; or where two or more corporations are affiliated at the beginning of

---

[1] The words in parenthesis were omitted from article 634 of Regulations 65 and 69.

the taxable year, and through change in stock ownership (or control) [1] additional corporations become affiliated, the parent or principal corporation should file a consolidated return and include the income of such corporations from the date of change of stock ownership. In either case, the subsidiary or subordinate corporation whose status is changed during the taxable year should make a separate return for that part of the taxable year during which it was outside of the affiliated group." (Regs. 45, art. 634, as amended by T. D. 4022, Cum. Bul. VI–1, p. 258; Regs. 62, art. 634, as amended by T. D. 4023, Cum. Bul. VI–1, p. 259; Regs. 65, art. .634, as amended by T. D. 4024, Cum. Bul. VI–1, p. 148; Regs. 69, art. 634.)

It is clear that this regulation is not in conflict with the law, and we think it further appears, from what will hereinafter be said upon consideration thereof, that it is not unreasonable, but is just and fair. The Revenue Bureau disregarded it, not because it was unreasonable, but because of the decision of the Board of Tax Appeals in Sweets Company of America v. Commissioner, 12 B. T. A. 1285. Following this decision, the Commissioner reversed his former findings under which he had held that the plaintiff and its affiliated corporations had been overassessed for the calendar year 1918 in the sum of $8,744,053.58, and refused to allow them any deduction on account of losses in the year 1919. If, in fact, the regulation was not in conflict with law and was reasonable, just, and fair, as we shall undertake to show, it ought not to have been set aside after the practice of the department had so long been regulated by it, and in so doing the Commissioner erred.

The regulation quoted expressly required that, where two or more corporations are affiliated at the beginning of a taxable year, and one of the subsidiary corporations drops out, or a new one is added, the parent corporation shall file a consolidated return for the group for the entire taxable year (excluding, of course, the income of the subsidiary which dropped out from the date of its separation, and including the income of the new subsidiary from the date it was taken in). It is clear that by this regulation the Treasury Department recognized that the affiliated group does not cease to exist in such cases, but continues for the purpose of computing the tax as long as the parent corporation remains the same. This construction prevailed at all times prior to the decision of the Board of

Tax Appeals in Sweets Company of America v. Commissioner, supra, and up to the present time has not been changed by any published regulation or ruling. In fact this construction was carried forward into the new regulations 75, under the Revenue Act of 1928, and made more definite in that the new regulations required specifically that the parent corporation should remain as a parent in order that an affiliated group should remain in existence. The Revenue Act of 1928, of course, does not apply to the case at bar, but we think that this long-continued practice, in which Congress has not merely acquiesced, but finally enacted into law, is very persuasive in determining the intent of that body in enacting the provision in question and whether the Commissioner could properly set the regulation aside in plaintiff's case.

Counsel for defendant rely largely upon the case of Sweets Company of America, supra, which the bureau considered, announced a rule different from that laid down in the regulations to which we have referred. By reason of this decision, the Commissioner reversed his former findings under which he had held that the plaintiff and its affiliated corporations had been overassessed for the calendar year 1918 in the sum of $8,744,053.58, and refused to allow them any deduction on account of losses in the year 1919.

The plaintiff insists that inasmuch as there was an affiliated group of the same corporations which continued throughout 1918 and 1919, the separation in November, 1918, of one member of the group and the addition in March, 1919, of a new member to the group that remained, and the elimination of that member in June, 1919, would not bring about a situation that would prevent the application of a net loss sustained by the affiliated group in 1919, against the net income of the affiliated group in 1918, under section 204 (b) of the Revenue Act of 1918. It further argues that if the opinion of the Board of Tax Appeals in the Sweets Company of America Case, announced the rule contended for by the defendant it was overruled by the language of the Board in Alabama By-Products Corp., et al. v. Commissioner of Internal Revenue, 16 B. T. A. 1073, which is followed in National Slag Co. v. Commissioner of Internal Revenue, 16 B. T. A. 1310, but as the original opinion in the Alabama By-Products Corp. Case, supra, was reversed upon a rehearing by an opinion promulgated January 24, 1930, the first opinion cannot be considered an authority upon the point now being considered.

---

[1] The words in parentheses were omitted from article 634 of Regulations 65 and 69.

In the case of Sweets Company of America, supra, the Board of Tax Appeals held that where two corporations were affiliated for the first six months of a calendar year, at which time a third corporation became a member of the affiliated group, and these three corporations remained affiliated for the succeeding four months, at which time the corporation which became a member of the affiliated group on July 1st absorbed the other two corporations by merger, three separate returns were required, namely, by the first two affiliated corporations from January 1 to June 30, inclusive, by the three affiliated corporations from July 1 to October 31, and by the one corporation from November 1 to December 31, and that a net loss sustained in the last two months of such calendar year might not, under section 204(b) of the Revenue Act of 1918, be deducted from the net income during the first six months of such calendar year of a corporation which was a member of the affiliated group into which was merged the other two corporations on October 31; that a net loss of an affiliated group of three corporations during the four months of the year might not be deducted from the net income of an affiliated group composed of two of these corporations during the preceding six months of the same year. We are not in accord with this decision with respect to the requirement of separate returns, and will give our reasons for differing therefrom.

The only reason given in the decision in the Sweets Company of America Case for requiring separate returns to be filed, which at all affects the decision in the instant case, is that the changes made in the affiliated group, as shown above, created a "different taxable unit * * * affecting the computation of the tax." Some other reasons are given, based upon facts in that case, which are not found in the case at bar, and possibly might distinguish the case from that before this court. But we think that to say that a different taxable unit was created because the tax for part of the year had to be differently computed, and that the tax had to be differently computed because there was a different taxable unit, is merely reasoning in a circle and does not assist us in coming to a conclusion. Moreover, the separate corporations are the taxpayers, and the affiliated group is merely a tax computing unit, not a taxable unit. However the statements contained in the opinion may be interpreted, they seem to us to miss the real point. We are here discussing the question of whether there was an affiliated group which continued in the case at bar through the years 1918 and 1919. The

answer to this question appears to us to be plain. The fifty-nine corporations which were in the instant case affiliated, as everyone concedes, up to the time when Libby, McNeill & Libby dropped out of the group, were none the less affiliated during the remainder of the year, and they were still affiliated throughout the year 1919 (the parent corporation being the same), notwithstanding the Union Meat Company was added to the group and remained a member thereof until June of that year. We do not think any changes which were necessitated in the computation of the tax required the making of separate group returns, and prevented this affiliated group from receiving the benefits of section 204(b). To this extent we do not concur with the decision of the Board in the Sweets Company of America Case and we are influenced in our conclusion by the additional consideration that the rule laid down in the case last cited is not, in our opinion, in accordance with the intent of Congress, which we think will appear from a consideration of the effect of the application of the rule contended for by defendant.

We have already shown that a different rule was applied by the Revenue Bureau and enforced through regulation during a period in which the new and complete revenue laws were enacted, but the new statutes contained nothing changing its effect. This was, we think, because the regulation worked in a fair and reasonable manner, and that the rule or regulation contended for by defendant would work so inequitably as to be entirely unreasonable. Its effect would be when applied to corporations that have been continuously affiliated for a period of two years, where changes had been made in the group to which these corporations belonged, to take away from them, either entirely, or in great part, the benefits of a provision of the law which was plainly intended as a relief provision, notwithstanding the purpose and object of the law plainly was to give relief to those, who, in the years when there was great fluctuation in values, might have sustained a large profit one year and a great loss in the next. And all this would occur, notwithstanding in fairness these corporations were as much entitled to relief as those in a group in which there had been no changes, and as much entitled to relief as a partnership which owning various enterprises had sold some thereof and taken in others. The instant case is an example of the hardship that can be created by the application of the rule contended for by defendant. The large profits made in 1918, against which very heavy taxes

were assessed in accordance with the rates prevailing for that year, were for the most part swept away by a loss of over $24,000,-000 in 1919, on the part of the affiliated corporations. It is true that cases of hardship are not by themselves and alone controlling in the construction of a tax statute. Nearly all taxes, excepting taxes on luxuries, sometimes inflict hardships. But a construction that would avoid hardship, or lessen the number of hardships, when equally consistent with the law, is certainly the more reasonable. We have carefully considered the application of the rule laid down in the regulation which had been in force up to the time of the decision in the Sweets Company of America Case, and think it apparent that it will generally work with fairness as far as the taxpayer is concerned. It is contended, on behalf of the defendant, that the general use of the rule laid down in the regulation referred to would give large opportunity for evasion of taxes, but if the rule be applied in the manner that we have hereinafter set forth, it will be observed that all intercompany transactions are eliminated and the amount of the deduction, if any, on account of the loss resulting in a subsequent year, is not affected by the condition of the incomes of companies which dropped out or are added, and that consequently no opportunity for evasion is afforded.

In this connection it ought to be stated that we think a proper construction of section 240 of the Revenue Act of 1918 (40 Stat. 1082), with reference to consolidated returns, is that if there is an affiliated group that continues throughout the taxable year and the separation from the group of one of its members during the year, or the addition to the group of a new member during the year, does not end the taxable year of the consolidated group for the purpose of the determination of the consolidated net income and invested capital for the computation of the income and profits tax, that a consolidated return for the calendar year or the fiscal year, as the case may be, should be filed by the consolidated group including the income and invested capital of the corporation which became separated, or was added to the group during the year to the date of the separation, or the addition, as the case may be. The consolidated group, as such, is not a taxpayer but a tax-computing unit, and the corporations which are members of the affiliated group for the year, or became members during the year, lose their separate identity while so affiliated only for the purpose of computation of the tax upon one income and one invested capital which is composed of the income and invested capital of such corporations combined, but, when it comes to the assessment and collection of the tax so computed, it is assessed against and collected from the several corporations constituting the affiliated group, in proportion to the net income properly assignable to each, unless there is an agreement among them as to a different apportionment. An affiliated group as a tax-computing unit may, in some respects, be likened unto a partnership under the 1918 and subsequent revenue acts.

The views that we have expressed are also supported by Internal Revenue Law Opinion 1113, rendered by the Solicitor of Internal Revenue and published in 1924. Notwithstanding this was the official declaration of the bureau, the contention made on behalf of the defendant in this case forces its counsel to repudiate it. We have set out a part of the Solicitor's opinion above referred to in a note attached to this opinion,[2] on account of this reference thereto.

---

[2] Where two or more corporations were not affiliated for the year 1919 but were affiliated for the preceding taxable year, and one or more of the corporations which were included in the affiliated group for the preceding taxable year sustained a net loss for the year 1919, the amount of such net losses should be applied against the consolidated net income of the affiliated group for the preceding taxable year. If, however, the amount of the net loss of a member exceeds that porportion of the consolidated net income for the preceding taxable year attributable to it, the amount of the excess shall not be allowed to further reduce the consolidated net income for the preceding taxable year, but shall be applied against the income of such corporation, or the consolidated group of which it is a member, for the succeeding taxable year. The refund resulting from such application of the net losses against the consolidated net income for the preceding taxable year should be made to those corporations which sustained the net losses for the year 1919. To determine the amount of refund to which each corporation is entitled, the amount of tax due from each corporation upon the basis of the net income properly assignable to it, prior to the application of the net losses, should first be computed. The net income of each corporation should then be recomputed by making adjustment for the amount of the net loss sustained by it for the year 1919, and a proportionate part of the tax due upon the basis of the consolidated return after applying the net losses to the consolidated income should be assigned to each corporation. The difference between the amount of tax assignable to any one corporation upon the basis of its net income before applying the net loss, and the amount of tax assignable upon the basis of its net income after applying the net loss, will equal the amount of the refund to which that corporation is entitled.

We think it cannot fairly be claimed that the reference in section 240(a) to a "consolidated return of net income" and to the computation of the tax "in the first instance as a unit" implies the adoption of a complete economic unit theory, i. e., the obliteration and disregard of corporate structures in the determination of taxable income, and also such modifications of other provisions of the statute as may be necessary to give due effect to the logical consequences of the acceptance of that theory. If it had been the intention of Congress to so modify the general principles laid down in the other provisions of the act, we think there would be found appropriate qualifying phrases in the act setting forth the modifications which would be required to give effect to this theory of consolidation. In the enactment of section 240, Congress was simply laying down the principle that where a group of companies constituted a single business unit, the net income, determined in accordance with the general principles of law, should be *combined*, losses being offset against gains, and the *rate of tax* should be determined by the relation between such combined net income and the invested capital of the group as a whole, each corporation being at all times separately recognized and individually liable for its proportion of the tax according to the net income properly assignable to it.

The question of whether plaintiff should have made its returns on a calendar or fiscal year basis remains to be decided before we determine specifically how the principles hereinabove set forth shall be applied.

The question of whether plaintiff had a fiscal year is, as we have before stated, a mixed question of fact and law, and it, therefore, becomes necessary to determine what a fiscal year is, under the statute, and then to consider the facts in the case to which the law applies. Section 212(b) of the Act of 1918 (40 Stat. 1064), directs the manner in which the net income to be returned shall be computed, and, together with section 200, lays down a rule with reference to accounting periods and defines the term "fiscal year." Section 212(b) is as follows:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

Section 200 defines the term "fiscal year" as:

"An accounting period of twelve months ending on the last day of any month other than December."

The act of 1918 was effective as of the first of January of that year, and these provisions are still in force.

The contention on behalf of the defendant is that the words "ending on the last day of any month" are not to be taken literally, but may be construed to refer to a day which is not the last day of a month but somewhere near it, and it seems to have been so held in effect in the case of Appeal of Stevens Manufacturing Co., 1 B. T. A. 610, but no reason is given therein for such a construction unless it be the somewhat peculiar facts of that case which are different from those in the one at bar. We are unable to agree that this statute may be so construed. It is not ambiguous, but positive and direct, and if not held to mean just what it says, by the words "the last day," it may mean any day between the middle of the month and the last day, or at least any day at all near the last day, and thus practically lose all meaning or significance so that it might just as well have never been enacted. It ought to be said also that subsequent decisions of the Board of Tax Appeals are not in accord with the case last cited, if it holds as contended by defendant. Also, in this connection, it should be noted that Treasury decisions, and regulations altogether too numerous to set out in this opinion, up until the time when the controversy involved in this case arose, have attached a literal meaning to the words "the last day." The fact that the bureau had theretofore so held, without, so far as we are able to find, any variation, strengthens our conclusion as to the proper construction of the statute and we think it clear that the bureau should have adhered to its former rulings.

If we are correct in this construction of the statute, it follows that plaintiff had no fiscal year because none of its accounting periods ended on the last day of the month except by accident, and it is obvious that this accident could not make a rule with reference to accounting periods.

Turning again to the statute (section 212 (b), it will be seen that as the taxpayer did not have "a fiscal year as defined in section 200," the law required that "the net income shall be computed on the basis of the calendar year."

The question of whether plaintiff did, in fact, have an annual accounting period on the basis of the calendar year has been argued at great length by counsel on each side. The evidence bearing thereon is very voluminous, and we have found from it, as an ultimate fact, that the plaintiff did have an annual accounting period ending in the last week of December of each year. It would unduly extend the opinion to discuss our reasons for this finding of fact, and, under the view that we take of the law in the case, it is not a necessary element in making up our decision. We have already held that the taxpayer did not have a fiscal year, and have shown that in such case the law required that "the net income shall be computed on the basis of the calendar year." There is no dispute in the evidence but that plaintiff made its returns on a calendar year basis. It should also be said that the findings show that plaintiff's accounting on the calendar year basis was accepted for the years in controversy, and had always been accepted for the previous years, and that there never has been any complaint or objection made on the ground that it did not end on the last day of the year.

Having decided that one consolidated return for the affiliated group should be made for the taxable year 1918, and one consolidated return for the taxable year 1919, and also that, under the statute, the consolidated net income and invested capital should be determined and the computation of the tax made on the calendar year basis, the next principle to be determined is the proper method to be followed in giving the affiliated corporations the benefit of the deduction of the net loss for 1919 from income for 1918, under section 204 (b) of the Revenue Act of 1918.

It is stipulated that in redetermining the tax liability for 1918 of the affiliated group, of which the plaintiff was the parent corporation, pursuant to section 204(b) of the Revenue Act of 1918, the Commissioner of Internal Revenue, before he changed his position because of the decision of the Board of Tax Appeals in the case of Sweets Company of America, supra, proceeded in accordance with the principle of Internal Revenue Law Opinion 1113, C. B. III–2, p. 36, a part of which is set out in footnote No. 2; that is, deducting from the consolidated net income of $39,-

465,221.11 of the consolidated group for 1918, on the calendar year basis, the consolidated net loss of $24,534,929.44 of the group for 1919, on the calendar year basis, after first eliminating from the consolidated net income for 1918 the net income of Libby, McNeill & Libby for that year, separately computed, and from the consolidated net loss for 1919 the net loss of the Union Meat Company for the part of that year it was in the affiliated group, separately computed. In other words, what the Commissioner did, before he decided that the decision of the Board of Tax Appeals prevented the deduction of a net loss for 1919 from 1918 income, was to deduct the total of the consolidated net loss for 1919 from the total of the consolidated net income for 1918, and, after this had been done, to recompute the tax for 1918 upon the revised consolidated net income, and to allocate the tax as redetermined to each of the corporations in the affiliated group in 1918 on the basis of the tax originally assessed or allocated to them, and to give them refunds accordingly, regardless of whether such corporations had a net loss or a net income in 1919. In our opinion the method thus followed by the Commissioner, and which it appears he proposes to follow if we decide that the net loss for 1919 may be deducted from 1918 income, was erroneous. As we shall hereinafter show, the Commissioner should have deducted in 1918 only that proportion of the consolidated net loss for 1919 as was allocable to such corporations having net losses in 1919, and that such proportions should have been applied as a deduction from the individual net incomes of the corporations for 1918, as had net incomes in that year.

It might be argued that the position we have taken herein, as to the separateness of each member of the affiliated group as a taxpayer, is not consistent when we refuse to give to one member of the affiliated group, who sustained a net loss in 1919, the benefit of this net loss as a deduction from 1918 income when the affiliated group in 1919, when combined, had a consolidated net income. The answer to this is that in such a case, for the purpose of computation, section 240 is a limitation of section 204 and that, in the computation under section 240, losses of one company must be offset against the income of the other companies before it can be determined whether there is a net loss of any company in 1919 which may be applied against its income for 1918. Obviously, if this were not done, the net loss which had been used to offset the income of the other companies in the consolidated group would be allowed again to re-

duce the income of the company which sustained the loss when applying it to the income of the prior year, and we think Congress did not intend a double deduction of this character.

Applying the principles herein announced, that when deducting a consolidated net loss for 1919 from a consolidated net income for 1918, the separate identity of each corporation which was a member of the affiliated group must be kept in mind, the example set forth in a footnote will illustrate the method which, in our opinion, should be used in applying a consolidated net loss for 1919 against the consolidated net income for 1918.[3]

The case of the plaintiff now before us is somewhat complicated by reason of the fact that the parties have stipulated only the total consolidated net income for 1918, and the total consolidated net loss for 1919, and the refund to which the plaintiff and its affiliated corporations would be entitled by the application of this net loss for 1919 to the net income for 1918 as applied by the Commissioner, and, further, by the fact that there was an agreement between the corporations as to the allocation of the tax, but we will first apply the foregoing principles to the allocation of the tax to the several affiliated corporations on the basis of the net income assignable to each. In the first place, the Union Meat Company which became a member of the affiliated group on March 21, 1919, which membership was ended on June 2, 1919 (referred to in the example as Corporation

---

[3] In this example corporation D in 1918 drops out in that year, as did Libby, McNeill & Libby in the case before us, and corporation E in 1919 came into the group and was separated therefrom in 1919, as was the Union Meat Company in this suit.

### 1918

| | |
|---|---|
| A—Net income | $ 5,000 |
| B—Net income | 8,000 |
| C—Net income | 3,000 |
| D—Net income | 4,000 |
| Consolidated net income | $20,000 |

### 1919

| | |
|---|---|
| A—Net loss | $6,000 |
| B—Net income | 2,000 |
| C—Net loss | 2,000 |
| E—Net loss | 2,000 |
| Consolidated net loss | $8,000 |

The results, as shown above, are of course determined on a consolidated basis; that is, after the elimination of intercompany transactions pertaining to the various members of the groups.

It will be noted, first, that of the companies in the group for 1919, corporations A, C, and E have sustained net losses, whereas corporation B has realized a net income. Were it not for the fact that the companies are affiliated, each could apply its net loss against its net income for 1918, and the respective excess, if any, would be carried forward to 1920; but since the companies are affiliated in 1919, and a part of the losses have already been applied as an offset or in reduction of the income of another member of the group, it is obvious that it would be improper to allow these corporations to apply the entire amount of their net losses against their respective net incomes of the preceding period; the only amount to be applied is the consolidated net loss or excess of individual losses for 1919, over individual incomes for 1919. To treat the matter otherwise would be to permit double deductions to the extent of the income of the company which had an income for 1919.

Secondly, corporation D was a member of the consolidated group for 1918, and had a net income, but was not in the affiliated group for 1919, whereas corporation E was a member of the affiliated group in 1919, and had a net loss, but it was not a member of the affiliation in 1918. What consideration should therefore be given to these companies? First, what consideration should be given to corporation E, and what disposition should be made of the net loss suffered by it in 1919? It was a member of the affiliated group in 1919, and therefore a part of the consolidated net loss may properly be attributed to it. That is, of the companies in the group for 1919, corporation B had a net income of $2,000, and the other three companies had net losses which extinguished B's net income and produced a consolidated net loss. Since, from what has been heretofore said, an individual member of the group in 1919 cannot get the benefit of its individual net loss suffered in 1919 as a deduction from its 1918 net income, unless there is a consolidated net loss for 1919, the consolidated net loss must first be determined for the entire affiliated group in 1919. In the example given above, this shows a consolidated net loss of $8,000, which may be said to have resulted from the net losses of corporations A, C, and E in the respective amounts of $6,000, $2,000, and $2,000. Since each may be said to have contributed to the extinguishment of corporation B's income, the consolidated net loss should be apportioned in the ratio of losses suffered, or 60 per cent. to A, 20 per cent. to C, and 20 per cent. to E. On this basis, the net losses of the respective companies which may be carried back to 1918 and allowed as deductions to the respective companies are, A—$4,800, C—$1,600, and E—$1,600. Corporation A's net loss would then be used to reduce its net income of $5,000 for 1918, and corporation C's net loss to reduce its net income of $3,000 in 1918; thus showing their reduced incomes as $200 and $1,400, respectively. If the net loss of either of the companies had exceeded its income, then the excess would not have been allowable as a deduction in 1918, but would have been carried forward and allowed as a deduction from that particular company's net income in 1920. On this theory, corporation E's net loss would, of course, not affect the consolidated net income computation in 1918, for the reason that it was not a member of the affiliated group, and the company did not exist in the group to which the net loss might be applied. It would go to corporation E

E), should be included in determining the consolidated net loss for 1919, and its loss determined in the manner indicated in the example hereinbefore given. Of course this net loss will not be used in the consolidated computation for 1918 for the reason that this corporation was not a member of the 1918 group, but it will serve to reduce the amount allocable to the other companies.

In the next place, Libby, McNeill & Libby, which was a member of the affiliated group for eleven months in 1918 (referred to in the example as Corporation D), should also be included in the 1918 computation; that is, the consolidated net income as heretofore determined and agreed upon by the parties,

before the application of the 1919 net losses, will be unchanged.

The next step is to determine the net losses of the companies in 1919, which are to be applied in the deduction of their respective net incomes in 1918. The parties have stipulated that the consolidated net income for 1918 was $39,465,221.11, and that the consolidated net loss for 1919 was $24,534,929.44, but we have no way of knowing, except by reference to the 30-day letter of the Commissioner attached to the petition as Exhibit K, and made a part of the stipulation, which letter does not agree with the foregoing amounts determined by the Commissioner in his final decision, which companies realized

in whatever capacity it existed in 1918. As a result of the foregoing, the application of the consolidated net loss for 1919 against the consolidated net income for 1918, shown in the example given, produces the following result in 1918:

A—Net income........................ $ 200
B—Net income........................ 8,000
C—Net income........................ 1,400
D—Net income........................ 4,000

Consolidated net income...... $13,600

The statute provides that after the net loss for 1919 has been applied against the net income for 1918 the taxes shall be redetermined accordingly. Since the corporations were affiliated in 1918, and since section 240 is a limitation on section 204, the computation of the tax for 1918 must be on the basis of a consolidated return. However, we have determined the respective separate incomes of the several corporations for 1918 after applying the allowable individual net losses to the individual companies. Assuming that when the tax was originally computed in 1918, on the basis of the consolidated return, as filed, there was no agreement between the corporations as to the allocation of the tax to one or more of them, and that the allocation was made on the basis of the net income properly assignable to each, then in that event, the original tax, before applying the net loss, would have been allocated to corporations A, B, C, and D in the respective proportions of 5/20, 8/20, 3/20, and 4/20. However, on the basis of the revised incomes, after the application of the net loss, the proportionate amount of tax, as redetermined, which would be allocable to each corporation, would be changed so that the tax assignable to corporations B and E would be increased, and that assignable to corporations A and C would be decreased, the proportions thus to be used being 2/136, 80/136, 14/136, and 40/136. While the proportions would change, the tax would not be changed in the cases of B and D, since their incomes have not been changed, provided the reduction in the total consolidated net income did not mean a change in the rate at which the tax would be computed, and the entire change would be reflected in the reduction of the tax assignable to corporations A and C. The change thus shown, or the difference between the tax orig-

inally allocated to corporations A and C, and that finally allocated to them, would be the refunds to which they are entitled on account of the net losses for 1919. However, if the reduction in the consolidated net income is such that there is a reduction in the rate of tax, say from 80 per cent. to 65 per cent., then there would be refunds not only to corporations A and C, but also to corporations B and D.

This brings us to the consideration of the situation caused by the fact that corporation D was a member of the affiliated group in 1918, but was not in 1919. This corporation must be included in determining the consolidated net income to be used as the basis of the computation of refunds to which corporations A and C are entitled. As stated above, it is immaterial where there is no change in the tax rate, but if in the original computation the tax had been computed at the rate of 80 per cent. and with the reduced income the rate is changed to 65 per cent., a different situation results. The reduction in income has taken place in the instance of corporations A and C, and, therefore, it is fair that corporations B and D, which paid a higher tax in the first instance because of the high incomes of corporations A and C, should have the benefit of the reduction of the incomes of A and C to offset the proportionately higher burdens which they bore in the first instance. It would not be just to give the entire refund to corporations A and C when the redetermination on a consolidated basis in 1918 is made and the tax computed at a lower tax rate. Corporations A and C are receiving the entire refund to which they are entitled when they are given the refund reflected by the reduction in their respective incomes. Obviously, they should not also get the benefit of the reduction of the tax of corporations B and D, which is computed at a lower rate. The purpose of the foregoing discussion is to show that the proper method of making the 1918 computation is to include corporation D as a member of the consolidated group in the same manner that it was included originally, if it had no net loss for 1919. In this manner we follow the statute and compute the tax for 1918 on a consolidated basis of all companies which were affiliated for such year, and we also apply the allowable net loss for each taxpayer for 1919 against its income in 1918 and give a refund accordingly.

incomes and which sustained losses for either 1918 or 1919, and, therefore, we are not in a position to determine the refunds to which the plaintiff or the several corporations are entitled until we have a complete statement of the incomes and losses of the various companies as computed to make up the consolidated net income for 1918, and the consolidated net loss for 1919. While Swift & Co. is the only corporation before the court, the judgment rendered would only involve it, but, under the method hereinbefore set forth, it would be necessary to have the full information as to all of the companies in order to determine the refund to which the plaintiff is entitled. The parties have attempted to stipulate the refund to which the plaintiff (as well as the other companies) is entitled (see findings 18 and 21), but this is not very helpful when we consider each corporation on an individual basis as hereinbefore outlined. However, by reference to the 30-day letter attached as Exhibit K to the petition, as a basis, we can illustrate the application of the principles above outlined in the case of the plaintiff, Swift & Company. In 1918 the consolidated net income of all the companies, as shown by this letter, was approximately $42,-000,000, and the consolidated net loss for 1919 was $23,000,000. The plaintiff's net income for 1918 was $22,000,000, and its net loss for 1919 was $29,000,000. The total net loss in 1919, before being offset by income from the other companies, was $32,000,000. The net loss of the plaintiff which it could use in reduction of its 1918 net income would be $^{29}\!/_{32}$ of $23,000,000, or a little less than $21,-000,000. This $21,000,000 net loss could be used in reduction of the $22,000,000 net income of the plaintiff, and leave a net income of $1,000,000 for 1918. In the same way, the other companies having a net loss in 1919 would have the allowable net loss determined and applied against their respective net incomes for 1918. Of course, where a net loss occurred in 1919 and the corresponding company also had a loss in 1918, the allowable 1919 net loss would not be used in reduction of the consolidated net income for 1918. And, similarly, no net loss for 1919 should be carried back to 1918 in excess of a particular company's net income for 1918. The excess would go to 1920. Likewise, the allowable net losses of the other companies would be determined and applied in a manner similar to that shown in the example hereinbefore first given, and, from the net loss shown as to all members of the group, the consolidated net income of the group would be determined. The tax would then be computed on a consolidated basis.

The next step would be to allocate the tax to the different corporations and to determine, in the case of the plaintiff, the refund due of the difference between the tax as originally paid and that found due.

Since, in the stipulation of the parties, the refund to the plaintiff under our conclusion that a calendar year should be used was determined in accordance with the principle of applying the consolidated net loss for 1919 against the consolidated net income for 1918, which we have held to be erroneous, and since the stipulation was that the original allocation of the tax among the several affiliated corporations in 1918 was on the basis of an agreement among the corporations, which might not be applicable to the revised income determined by applying the principle and following the method hereinbefore set out, it will be necessary to allow the parties further opportunity to stipulate the necessary facts, and to make the necessary computation in accordance with the principle herein announced. The entry of judgment will therefore be withheld to await the filing of a further stipulation and computation in accordance with the conclusion set forth herein.

BOOTH, Chief Justice, and WILLIAMS, LITTLETON, and GRAHAM, Judges, concur.