BERMONT OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MULTIPLATE VALVE COMPANY (FORMERLY O'MALLEY-BEARE VALVE COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15543, 27893, 32463, 36734. Promulgated February 17, 1931.

*Lincoln R. Clark, Esq.*, for the petitioners.
*Byron M. Coon, Esq.*, for the respondent.

186

OPINION.

STERNHAGEN: ██ The petitioners are entitled, under section 234 (a) (7), Revenue Act of 1921, to deductions in 1921, 1922, and 1923, of a reasonable allowance for the exhaustion of the four patents

owned on March 1, 1913, and the basis of such deduction is their fair market price or value on that date. The petitioners claim a value of $495,000 which they measure by the par value of the stock issued for the patents at various times up to 1918. The respondent has denied any value on March 1, 1913. The question is, whether petitioners have proved any value; and if so, how much.

The findings of fact fairly set forth the principal evidence of such value;—the description of the patents, their economic and commercial significance, the method required to finance their exploitation and the extent of its success measured by stock sold before March 1, 1913, and the gross sales. There is no evidence of costs or other expenditures and no other figures or facts from which earnings or profits, if any, present or prospective, can be computed or inferred. There is no allocation of the 1913 sales to the periods before and after March 1. There is no fact or other explanation of the sudden jump in sales in 1913 or, as we have said, whether it was profitable, and no evidence as to whether an increase in these sales was reasonably in prospect on March 1, 1913. As has been frequently held, it is not the actual subsequent facts which are important in determining value on the basic date, but only the reasonable prospects of the future which could be seen on that date. A possible purchaser of these patents on March 1, 1913, could only examine the patents, the gross sales of 1911 and 1912, and an unknown portion of the sales of 1913 and the amount of cash that had been paid for stock, $40,930, under the terms of the by-laws that 10 per cent more would be issued for the patents than for cash. He would have no knowledge of what the cash capital had been used for or whether it had been spent. With this evidence before us, and the burden of proof on the petitioner, we can not evaluate the patents on March 1, 1913, at a higher figure than such a reasonable purchaser would probably have paid. With such limited facts before him, he would perhaps be unwilling to buy; but we can not entertain that idea, because the law assumes that there is a price at which the parties will meet, and this is the figure to be fixed.

Slim as the evidence is, we think it proves that the patents were, on March 1, 1913, not entirely worthless, as respondent has in effect held. In our opinion, the fair market price or value on that date was $20,000 and this has been included in our findings of fact. The reasonable allowance for exhaustion for the years 1921, 1922, and 1923 should be computed accordingly.

■ The issue as to the item of interest of $7,310.57 in 1922 is surrounded by confusion on both sides. The determination of the Commissioner and the accompanying explanation are ambiguous; but interpreting it as best we can, it indicates that a deduction in respect of this intercompany item was disallowed because the Com-

missioner had no evidence that the amount had been correlatively included in the income of the receiving company. As shown by the findings, the Valve Company did include this item among those making up its income of $24,323.92 by including it in its interest on daily balances,—$8,497.01. The respondent was therefore in error in increasing the Valve Company's income for 1922 by this item, and the determination is in this respect reversed.

■ For 1923, the Commissioner first determined a deficiency of $3,614.06 against the Oil Company, this being the unassessed portion of the total consolidated tax liability which he determined for this year amounting to $18,538.26. While the proceeding attacking this deficiency was pending before the Board, the respondent determined a deficiency of $18,538.26 against the Valve Company and sent notice of this deficiency to that company without explanation of its computation. The Valve Company duly attacked this before the Board. It is now contended by these petitioners that this is a duplication of the same tax liability, and it is manifest that this is so. The total consolidated tax as determined by the respondent was $18,538.26. Of this, $14,924.20 had been included on the original return and paid, leaving an apparent deficiency of $3,614.06. The duplicate amount of $18,538.26 should be eliminated in the redetermination.

The deficiency of $3,614.06 rests upon the disallowance of the deduction for depreciation of patents. In accordance with our decision above, the deficiency should be redetermined by the allowance of depreciation in 1923 based upon a value of $20,000, and as so adjusted the amount of the deficiency is held to have been correctly determined.

■ The petitioner contends, however, that in respect of this consolidated tax liability for all three years there has been no agreement between the affiliated corporations for the apportionment of the liability; therefore, as provided in section 240, Revenue Act of 1921, the apportionment must be made in accordance with the respective net income; and, since the deficiencies are predicated entirely upon the net income of the Valve Company, the Oil Company may not be charged with any portion of them, especially for 1923 when the Oil Company had no net income but a loss. The Commissioner, on the contrary, has in effect determined that there was an agreement for assessment against the Oil Company. He has also introduced in evidence his Form 1122, filed by the Valve Company for 1920 and 1921, stating that the tax would be paid by the Oil Company as the parent and that none of it was to be assessed against the Valve Company, the subsidiary. The only evidence tending to disprove an agreement was that of one officer of the Valve

Company that no agreement had been filed by it with the Commissioner, and of another officer in both companies who stated that he knew of no agreement. We think, therefore, that we may infer from the evidence that there was such an agreement for the taxable years here in question as was contemplated by section 240 of the statute, and that the deficiences for these years adjusted as we have indicated may properly be determined against the Oil Company. Cf. *Popular Priced Tailoring Co.* v. *Commissioner*, 33 Fed. (2d) 464; *L. A. Thompson Scenic Railway Co.*, 21 B. T. A. 718.

*Judgment will be entered under Rule 50.*