**WILSON & CO., Inc., v. UNITED STATES.**
No. H–227.

Court of Claims.
Jan. 6, 1936.

William R. Brown, of Chicago, Ill. (Covington, Burling & Rublee, of Washington, D. C., on the briefs), for plaintiff.

John W. Hussey, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (T. H. Lewis, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiff is- the successor to the corporation of the same name engaged in what is commonly called the packing house business and seeks to recover income and profits tax which was paid by its predecessor for the year 1918. For convenience both in the findings and the opinion the name "plaintiff" is used as applying both to the old corporation, which was a New York corporation existing in 1918 and continuing in existence until 1926, and also to the plaintiff in this action, a Delaware corporation of. the same name which acquired the assets of the New York corporation.

The original corporation owned all the stock of some forty-four corporations, the names of which appear in the findings, and for each of these years filed .on behalf of itself and these corporations a consolidated return for income and profits tax purposes. The return for 1918 showed a consolidated net income for the group upon which a tax was paid by plaintiff. The

return for 1919 made in the same manner showed a loss. In 1919 the plaintiff paid part of the tax shown to be due for 1918 and filed a claim in abatement for the balance amounting to $1,016,629.82, and about June 13, 1919, each member of the affiliated corporations in the consolidated group except the plaintiff, as parent corporation, filed an information return for the year 1918, and in reply to a question propounded on the form used as follows: "9. State the amount of income and profits taxes for the taxable year apportioned to the subsidiary or affiliated corporation making the return," made answer, "None." After the filing of the returns mentioned above and before this suit was commenced, there were proceedings on behalf of the plaintiff and the government, and among others the plaintiff filed claims for refund and abatement, the revenue officers made examination of the returns, and the Commissioner determined and assessed an additional tax for 1918. This suit was begun June 7, 1927, by filing a petition in which plaintiff sought to recover the entire tax paid for 1918 on the ground that the consolidated group for which it had made a return had sustained a net loss for 1919 which should be deducted from the net income of the group for 1918, and that, when such application was made as provided by section 204 of the Revenue Act of 1918 (40 Stat. 1060), the result would show no tax liability for 1918, and accordingly the tax paid that year by plaintiff should be refunded. The Commissioner considered the claims and protests filed by plaintiff, and on September 27, 1927, issued a certificate of overassessment which showed that a part of the tax paid for 1918 was refundable, and refund was accordingly made to the plaintiff. The suit, however, was continued, as plaintiff still contended that the whole amount which it had paid should be refunded. March 21, 1932, the amended and supplemental petition upon which the case is now submitted was filed. The amended petition alleged many errors in computing the taxes of the plaintiff and its subsidiaries for the years 1918 and 1919, which, if corrected in accordance with plaintiff's contentions, would show that no taxes whatever were due from the plaintiff for the year 1918. It is not necessary at this point to set out these claims in detail, but it should be said that the amended petition introduced an issue which defendant claims was not covered by the original petition and at least had not been mentioned in the proceedings between the parties up to the time of the filing of the amended petition. This issue relates to the manner in which the Commissioner computed the consolidated tax for the year 1918, all of which was assessed against the plaintiff. The precise nature of plaintiff's claim will appear when we consider further the facts in the case. Much of the argument made by the respective parties is devoted to questions relating to the propriety of certain allowances and deductions which plaintiff claims should have been made in computing the taxes in controversy. It will not be necessary, however, to consider these matters until other issues which may be decisive of the case have been determined.

The plaintiff contends that it was not liable for any taxes whatever for the year 1918. The defendant insists, on the contrary, that under the facts in the case the plaintiff was obligated to pay all of the taxes due for that year from the several members of the affiliated group and also that the plaintiff cannot now be heard to deny its liability for these taxes. In discussing the issues so raised, it will be necessary to state the facts more in detail.

The consolidated return which was filed for the year 1918 by the plaintiff on behalf of itself and the affiliated companies showed that in that year the plaintiff and most of the affiliated companies realized a profit, but some of the companies sustained a loss, and similar results were shown when the Commissioner made his final determination of the tax on September 27, 1927. In making his computation, the Commissioner simply deducted the aggregate net losses of the several companies which had not been profitable from the total net income of the other companies for the same year. The difference was $6,890,404.52, which he determined was the net income of all of the affiliated corporations for 1918 before applying the 1919 net loss. The Commissioner proceeded in the same manner in determining the situation in 1919. In that year the total of the losses exceeded tthe aggregate net income by $5,174,168.10, which the Commissioner found was the consolidated net loss for that year. The Commissioner then deducted the total consolidated net loss for 1919 from the total consolidated net income for 1918, thus showing a taxable consolidated net income for 1918 of $1,716,236.42. Upon this revised consolidated net income he

computed the tax liability for the group, and, since the tax thus determined was less than the tax which had been paid by plaintiff, the difference was refunded to plaintiff. In so computing the tax, the Commissioner was in error. In the case of Swift & Co. v. United States, 38 F.(2d) 365, 69 Ct.Cl. 171, 191, we held that in an affiliated group the individual corporations are the taxpayers, that the group is merely a tax computing unit and not a taxable unit, and that accordingly no basis exists under section 204 of the Revenue Act of 1918, for a group application of a consolidated net loss for 1919 to a consolidated net income for 1918 for the purpose of ascertaining the tax. The Commissioner of Internal Revenue has acquiesced in the rule laid down in Swift & Co. v. United States, supra, and it has been approved by the courts. Cf. Delaware & Hudson Co. v. Commissioner, 26 B.T.A. 520, affirmed (C.C.A.) 65 F.(2d) 292, Woolford Realty Co. v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128, and Planters' Cotton Oil Co. v. Hopkins, 286 U.S. 332, 52 S.Ct. 509, 76 L. Ed. 1135. It follows in cases like the one before us that, where an affiliated company sustained a net loss for 1919, it should be deducted from the individual net income of the same company for 1918, and, if it had no income for that year, there could be no deduction.

Plaintiff contends that certain adjustments other than those made by the Commissioner should have been allowed in computing its income. For the purposes of the argument, it may be assumed that these adjustments should have been made, and we have set out in findings 13 and 14 an itemized statement of the determination of the Commissioner with reference to the income or loss of each company for the years 1918 and 1919 and also a computation thereof in accordance with the contentions of the taxpayer for each of these years. Finding 14 (b) also includes a computation of 1918 taxable income in which allowable net losses of the various affiliated companies for 1919 are applied to the net income of the appropriate companies for 1918. From this computation it appears that a substantial part of the net loss of the group for 1919 is not allowable as a deduction for 1918, with the result that the consolidated net income for 1918, after applying the net losses of the several companies for 1919 to the extent to which

they are allowable, is $2,787,156.27. The Commissioner's determination of the tax was based upon his computation of a consolidated net income of $1,716,236.42, but the recomputation of the tax liability for the group as set out in finding 14 (b) shows an aggregate liability for the affiliated group for a greater amount than that previously determined by the Commissioner. In other words, so far as the total tax which should have been paid by the group as a whole is concerned, it has been underpaid instead of being overpaid.

Plaintiff does not question that, even when effect is given in its favor of all of the adjustments contended for, and the principles of the Swift & Co. Case are applied, the total of the tax liabilities of all of the affiliated companies would be greater than the amount which was finally collected as the tax upon the group as a whole. The argument is that, so far as plaintiff individually is concerned, its allowable net loss for 1919 was in excess of its net income for 1918, that under the law as it then stood it was entitled to have its loss for 1919 deducted or set off against the income for 1918,[1] and therefore it had no income for 1918. Upon this basis it is insisted that plaintiff is not liable for any tax whatever for the year 1918 and that the whole amount paid by it should be refunded. Plaintiff paid all of the tax which has been paid for the group. The affiliated companies paid nothing, and it is contended that plaintiff cannot be liable for the taxes of the affiliated corporations unless there was an agreement between all parties concerned that a tax should be paid by the parent company. It is insisted that there was no such agreement and consequently no liability.

Whether there was such an agreement is obviously a question of fact to be determined from all of the evidence. The conclusion of the Commissioner as to the method of computing the tax is prima facie correct, and the burden of establishing the nonexistence of such an agreement is upon the plaintiff. On this point it may be said that it is not necessary that the agreement should be in writing. It may be implied or inferred from the established facts in the case and the conduct of the parties under all of the circumstances shown by the evidence. In this case plaintiff, as parent of the affiliated group, owned all the stock

---

[1] See section 204 (b), Revenue Act of 1918 (40 Stat. 1061).

of the subsidiary corporations and controlled the policy and managed the business of each. The books of the affiliated corporations were kept and their tax returns were made under the direct supervision and control of plaintiff. In many instances the officers of the subsidiary corporations were also officers of the parent corporation. The consolidated return for 1918, which included the net income of plaintiff and the other corporations, was filed by plaintiff, and no indication was made therein other than that the tax should be assessed against and paid by plaintiff. On the contrary, it stated that plaintiff was the taxpayer, and the tax was accordingly so assessed. Plaintiff paid a part of the tax and filed a claim in abatement for the balance. No question was raised as to the propriety of the assessment against or payment by plaintiff. The subsidiary corporations whose every action was controlled by plaintiff also filed information returns in which it was stated that none of the taxes of the consolidated group was to be apportioned to them. In accordance with these proceedings no tax was assessed against or paid by the subsidiary corporations.

■ At all times the tax liability in the case has been considered and dealt with by the Commissioner without any objection by plaintiff on the basis that the entire tax was to be assessed against the parent company. When the Commissioner determined a deficiency, an exhaustive protest was filed by plaintiff, not on the ground that it was not liable, but on the ground that the assessment was excessive. Acting on this protest, an overassessment was determined in favor of plaintiff and a refund made. The facts recited above amply support the conclusion that there was an agreement that the entire tax was to be apportioned to plaintiff and paid by it. The only evidence to the contrary is the testimony of the attorney who had supervision of the preparation of the returns in question and who now appears as counsel for plaintiff in this proceeding. It may be that no written or formal agreement of any kind was ever entered into as to the apportionment, but, in view of the fact that the plaintiff owned all the stock of the other affiliated corporations and controlled their actions, the filing of the consolidated and information returns and the subsequent acts of the parties in conformity therewith are clearly sufficient to establish an implied agreement and justify the Commissioner in allocating

the entire tax to plaintiff. The circumstantial evidence outweighs the direct testimony.

The same question of fact has often been before the courts in other cases. The evidence presented in the instant case is at least as strong in favor of the action of the Commissioner as it was in any of them. In many of these cases an official of the parent corporation testified that there was no agreement, but it was held that this formal testimony was not sufficient to overcome the presumption in favor of the Commissioner's action and the circumstantial evidence. See Woodside Cotton Mills Co. v. Commissioner, 13 B.T.A. 266; Bermont Oil Co. v. Commissioner, 22 B.T.A. 182; Furniture Exhibition Building Co. et al. v. Commissioner, 24 B.T.A. 1279; Washburn Wire Co. v. Commissioner, 26 B.T.A. 464, and Id., 26 B.T.A. 1146, affirmed on this issue (C.C.A.) 67 F.(2d) 658; Himelhoch Brothers & Co. v. Commissioner, 26 B.T.A. 541; In re Temtor Corn & Fruit Products Co. (D.C.) 299 F. 326, and Popular Price Tailoring Co. v. Commissioner (C.C.A.) 33 F.(2d) 464.

■ It seems clear also that the plaintiff is now estopped from claiming that the taxes which it paid should be refunded. We have shown above that the plaintiff made a consolidated return referring to itself as the taxpayer in accordance with which the tax was assessed against it; that the subsidiary companies controlled by the plaintiff made only information returns stating that no part of the tax was to be paid by them; that plaintiff, not disputing its liability, paid part of the tax and filed a claim in abatement as to the remainder, which claim was allowed and no further payment made; that its protest against the deficiency assessed by the Commissioner was not on the ground that it was not liable, but under a claim that even the amount which it had paid was excessive; and that it filed a claim for refund which was allowed in part by the Commissioner and a large sum returned to plaintiff. Not until the amended and supplemental petition was filed did the defendant receive any notice that plaintiff claimed not to be liable for any tax by reason of the fact that its individual losses for 1919 exceeded its individual profits for 1918 and that the basic computation of its tax was wrong. The amended and supplemental petition was not filed until March 21, 1932. The statute of limitations had then run against the as-

sessment of the tax against the subsidiary corporations which were liable for it individually, as plaintiff now claims.

The case of Mahoning Investment Co. v. United States, 3 F.Supp. 622, 78 Ct.Cl. 231, certiorari denied 291 U.S. 675, 54 S. Ct. 526, 78 L.Ed. 1064, was in many respects like the one now before us. There were two affiliated companies. The Mahoning Investment Company was the parent company and owned all the stock of the subsidiary company, the Rochester & Pittsburgh Coal & Iron Company. The parent company filed a return showing that the company itself had no taxable income and that the consolidated income was the income of the coal company. The Commissioner made a deficiency assessment against the parent company although no taxes were due from it and the basis of the assessment was the profits realized by the subsidiary. The parent company, however, notified the Commissioner that it would pay the tax and did so pay it. In general, it accepted the situation, although its officers knew that it was not liable and there was no agreement that it should pay the tax. In the case cited we held that the conduct of the parent company and its acquiescence in the proceedings taken by the defendant to collect the tax were such as would naturally mislead the defendant and cause it to continue in the course which it had begun, and that it was not necessary for the party claiming the estoppel to show that the other party intended to mislead, or that direct proof should be offered that it was in fact misled. It is sufficient if this fact is found as a natural and ordinary inference from all of the circumstances shown by the evidence, and we have made such a finding in the case now before us. In the Mahoning Case, supra, 3 F.Supp. 622, 630, 78 Ct.Cl. 231, at page 248, we said: "The doctrine of equitable estoppel, or more properly as we think quasi estoppel, is gradually being extended by the modern courts to prevent a wrong being

done 'wherever, in good conscience and honest dealing,' a party ought not to be permitted to repudiate his previous statements and declarations."

We are clear that the rule applies in this case. After holding itself out as the proper party to pay the tax, the plaintiff now, when the statute of limitations has run, seeks to repudiate the representations of itself and its associates when it is too late to apply what it claims to be the correct rule of law. If its position were sustained, the affiliated group would not only escape the payment of any taxes whatever for 1918, but the plaintiff would receive a refund on what had been paid, although it was less than was actually due on the consolidated liability of the affiliated group which consisted of corporations all owned by the plaintiff. That equity and good conscience would not permit such a result to be brought about by the conduct of plaintiff we think is manifest. Our conclusion is that plaintiff is estopped from maintaining its claim for a refund regardless of whether the evidence establishes that an agreement existed that it should pay the consolidated tax.

■ One other matter with reference to the findings should be mentioned. Finding 4 recites that "plaintiff filed a consolidated income and profits tax return for 1918 for itself and the subsidiary corporations." This does not follow the wording of the stipulation of the parties which recites that "Wilson & Co., Inc. * * * and its affiliated companies filed a consolidated income, excess-profits, and war-profits tax return for the calendar year 1918," but we have many times held that we are not bound by the stipulation when it is contrary to a fact which appears in evidence. The finding recites the fact correctly. Finding 6 makes a similar recital with reference to filing a return for the year 1919.

Plaintiff's petition must be dismissed, and it is so ordered.