**FIRST NAT. BANK & TRUST CO. OF TULSA v. JONES, Collector of Internal Revenue.**

No. 1234.

District Court, W. D. Oklahoma.

May 7, 1945.

Conner & Winters, of Tulsa, Okl., for plaintiff.

Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl. (Samuel O. Clark, Jr., Asst. to Atty. Gen., and Andrew D. Sharpe and Lester L. Gibson, Sp. Assts. to Atty. Gen., on the brief), for defendant.

VAUGHT, District Judge.

The plaintiff filed its income and excess profits tax return for the year 1937, showing an income tax due of $41,238.50, which was paid in five payments, the last payment having been made about December 14, 1938. After an examination of the return, there was issued by the Commissioner of Internal Revenue a certificate of overassessment and a refund of taxes, including interest, was made in the amount of $1,148.61, which overassessment and refund resulted from an adjustment solely on the basis of bonds sold during the year 1937. On or about the 7th of March, 1940, the plaintiff filed with the Collector of Internal Revenue a claim for refund of income taxes in the amount of $5,185.17, alleging under oath

that in its income tax return for the year 1937 the plaintiff had included bad debt recoveries made in that year on debts that had been charged off in the years 1931 to 1935, inclusive, amounting to $34,567.79, which did not result in a reduction of the plaintiff's income tax for the years in which said debts were charged off. There was attached to the complaint a detailed statement of the bad debt recoveries made in the year 1937 and erroneously included as income in the year 1937, showing the names of the debtors, the years in which said items were charged off, the total amount charged off in said years, the total recoveries made prior to 1937, and the recoveries made during the year 1937 on said charged-off items.

The total recoveries in the year 1937 of bad debts charged off in the years 1931 to 1935, inclusive, shown by the plaintiff's 1937 income tax return to be taxable, amounted to $36,654.98, none of which effected a tax benefit either in the year in which said debt was charged off or in subsequent years, except the amount of $2,087.19, which represents the excess of recoveries of debts charged off in 1935 over and above the charge-offs for that year which did not effect a tax saving to the plaintiff or had not previously been recovered by the plaintiff.

By letter dated December 13, 1940, the Acting Internal Revenue Agent in Charge at Oklahoma City, Oklahoma, notified the plaintiff that instead of the plaintiff being entitled to a refund of $5,185.17, with interest, it was liable for additional taxes in the sum of $14,454.34. The ruling of said agent was based on the then ruling of the Treasury Department that bad debt recoveries shown in the plaintiff's 1937 income tax return, but excluded from income because they did not represent a tax benefit in the years in which they were charged off, were in fact income.

The plaintiff has paid the additional taxes based on said ruling and has filed with the Commissioner of Internal Revenue a separate claim for refund of the amount so paid which at the time of the filing of the complaint had not been acted upon by the Commissioner, but since this action was commenced, the plaintiff's contention with respect to said additional income tax has been sustained by the Commissioner.

On May 16, 1941, the Commissioner notified the plaintiff by registered mail that its claim first above referred to had been disallowed and this action was instituted to recover the sum of $5,185.17, excess taxes paid, together with interest thereon.

Thereafter, the plaintiff filed its supplemental complaint in which it reasserted its claim to the $5,185.17 and the additional sum of $14,454.34, the amount alleged to be due on its claim resulting from the erroneous reassessment, or a total of $19,639.51, with interest thereon.

The defendant has filed his answer admitting certain facts but denying the right of the plaintiff to recover either of the sums alleged due it.

The case was submitted on the stipulation of facts and certain additional oral testimony.

It was stipulated that the original income tax return of the plaintiff for the year 1937 shows the net loss, after deducting nontaxable recoveries, was in the amount of $1,617.42. In the trial of the case the plaintiff introduced in evidence a statement showing the recoveries of bad debts in 1937 and also the plaintiff's loss during that year, and claimed that the loss was $30,235.87 instead of $1,617.42. The government objected to this evidence on the theory that it contradicted the facts as disclosed in the plaintiff's original return. The case was continued for final hearing and time was given the government to check the figures that the plaintiff had submitted. The matter was referred by the Internal Revenue Agent in Charge in Oklahoma City to one of its agents, W. H. DeBolt, and in a letter to said Agent in Charge, dated December 14, 1944, with reference to this statement of the plaintiff, Mr. DeBolt stated:

"The writer understands that it is the plaintiff's contention that the recoveries shown on the above-mentioned list are nontaxable and should be excluded from income for the year 1935, thereby increasing its net loss for that year. The writer concurs in the plaintiff's view, and determines the net loss for the year 1935 to have been $30,235.87 computed as follows:

Loss as determined per RAR
 dated 3/14/38 1,617.42
Adjustment, as explained below 28,618.45
 ───────────
Corrected net loss 30,235.87"

The letter then explained the adjustment and the manner in which the agent arrived at his conclusion. The government objects

to the introduction of this evidence on the ground that it violates the provisions of the stipulation.

The real issue in this case is whether or not DeBolt's letter of December 14, 1944, should be admitted in evidence. It is not seriously contended by the government that the DeBolt letter does not state the real facts, but that it could not be admitted in the face of the stipulation.

 The evidence is competent, and while a stipulation generally is binding, yet if there is an error in the stipulation based upon misinformation at the time of the making of the stipulation, the court not only has the power to correct, but should correct the mistake. The government's own agent now states that the net loss of the plaintiff for the year 1935 was $30,-235.87, which is the contention of the plaintiff.

As to whether or not the stipulation is binding in the face of admitted error, our courts have expressed definite opinions.

"It is settled that a court cannot be deprived by stipulation of its power to give equitable relief. Hence, wherever justice requires a court may set aside a stipulation. 'Such agreements may go far towards informing the court's discretion; but it has inherent power, in the control of its own action, to relieve against them when made improvidently or when for any cause their enforcement would work injustice.' Palliser v. Home Telephone Co., 1911, 170 Ala. 341, 54 So. 499, 500. The power to set aside extends to time stipulations. Palliser v. Home Telephone Co., supra; Borgman v. Bultema, 1920, 212 Mich. 70, 179 N.W. 347. It follows that the trial court had power to grant a further extension of time for making the payments despite the stipulation entered into by the parties. This required that it exercise its discretion judicially, not for reasons clearly personal or otherwise legally insufficient." Laughlin et al. v. Berens, 73 App.D.C. 136, 118 F.2d 193, 196.

"The plaintiff contends that the stipulation was entered into through a mistake of law; that it was in no sense a compromise, for the reason that the taxpayer received no consideration; and that the court below in the exercise of a sound discretion had a right to relieve the plaintiff from the stipulation.

"The trial judge sustained the contention of the plaintiff, and we think properly did so. After the plaintiff had filed its petition before the Board of Tax Appeals for a redetermination of the Commissioner's findings of deficiencies, the Board decided the precise point raised contrary to the contention of the taxpayer, and it is apparent from the correspondence and the evidence given below that it was the intention of the taxpayer to submit to the finding of the Board. Afterwards, this court in the case of Marsh Fork Coal Co. v. Lucas, 4 Cir., 42 F.2d 83, decided the same questions against the contention of the Commissioner, reversing the Board of Tax Appeals in its decisions under which the stipulation here was made. The decision in the Marsh Fork case has been accepted as the established law. Under these circumstances, the stipulation entered into was evidently an agreement made under a mistake of law and did not partake of the nature of a compromise. The plaintiff by the stipulation merely agreed to pay what it was not, under the law as finally determined, required to pay, and, when it discovered its mistake, had the unquestioned right to ask that it be relieved." Brast v. Winding Gulf Colliery Co., 4 Cir., 94 F.2d 179, 181.

"One other matter with reference to the findings should be mentioned. Finding 4 recites that 'plaintiff filed a consolidated income and profits tax return for 1918 for itself and the subsidiary corporations.' This does not follow the wording of the stipulation of the parties which recites that 'Wilson & Co., Inc. * * * and its affiliated companies filed a consolidated income, excess-profits, and war-profits tax return for the calendar year 1918,' but we have many times held that we are not bound by the stipulation when it is contrary to a fact which appears in evidence. The finding recites the fact correctly." Wilson & Co., Inc. v. United States, 15 F.Supp. 332, 348, 82 Ct. Cl. 261.

 Judgment will be rendered for the plaintiff on its original complaint for $5,-185.17, together with interest, and on the supplemental complaint for $14,489.98, with interest as provided by law, as stipulated. Findings of fact, conclusions of law and a form of judgment may be submitted within ten days from this date.