**BREWERTON et al. v. UNITED STATES.**
No. M—333.

Court of Claims.
Jan. 14, 1935.

F. W. McReynolds, of Washington, D. C., for plaintiffs.

Elizabeth B. Davis, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen.

Before BOOTH, Chief Justice, and WHALEY, WILLIAMS, LITTLETON, and GREEN, Judges.

WHALEY, Judge.

This is a suit for the recovery of income and profits taxes for 1918. The present plaintiffs are the receivers for the corpora-

tion which succeeded to the interests of the corporation in existence at the time the returns hereinafter referred to were filed, but for convenience and simplicity of discussion the name "plaintiff" will be used indiscriminately as referring to the foregoing parties. In short, the facts may be stated as follows:

Plaintiff duly filed returns for 1917, 1918, 1919, and 1920 and paid the tax shown to be due thereon. In 1921 the Commissioner audited the returns for 1917 and 1918 and found an additional tax for each year. In making such determination, the Commissioner adjusted plaintiff's depreciation deduction for these years. When plaintiff was notified by the collector of the additional assessments, which were made July 13, 1921, plaintiff made payment in cash of the total amount less $934.86 for 1918, for which it filed a claim for credit on account of an alleged overpayment in that amount for 1919. In filing such claim for credit, plaintiff contended that a consistent application of the depreciation basis, as made for 1917 and 1918, to 1919 would result in an overpayment of $934.86 for 1919. The claim for credit was accompanied by a bond in double the amount claimed as a credit. The collector applied the cash received in full satisfaction of the additional tax for 1917 and of all of the additional tax for 1918 except $934.86 for which the claim for credit was filed, thus leaving an outstanding assessment on his books of that amount for 1918. The claim for credit was duly forwarded to the Commissioner of Internal Revenue at Washington for consideration.

On or about April 25, 1922, a further audit was made by the Commissioner of plaintiff's returns for 1917 and 1918 and such audit also included the returns for 1919 and 1920. As a result of the audit, the Commissioner determined further additional taxes for 1917 and 1918 of $2,740.65 and $16,257.-40, respectively, and also overassessments for 1919 and 1920 of $484.84 and $10,054.42, respectively. The additional taxes were thereafter duly assessed. Plaintiff's contention as set out in its claim for credit for $934.86 was not sustained, but in lieu thereof the Commissioner found an overassessment of $484.84 for 1919. The Commissioner duly forwarded assessment and overassessment schedules to the collector and noted on the assessment schedule that demand should not be made for the additional assessments until after comparison with the schedule of overassessments on which appeared the overassessments in favor of plaintiff, but no reference appeared on such schedules to specific action on the claim for credit for 1919. The collector found the overassessment of $484.84 for 1919 and of $10,054.42 for 1920 were overpayments and credited them to the additional assessment of $16,-257.40 for 1918, thus leaving a balance due of that additional assessment of $5,718.14 which was paid in cash November 13, 1922. The additional assessment for 1917 was likewise paid in cash November 13, 1922. The overassessment schedule referred to above was signed by the Commissioner August 21, 1922, and by the collector October 5, 1922.

In making the above credits of the overpayments for 1919 and 1920 against the additional assessment for 1918 and thus determining the cash balance to be paid for 1918, the collector overlooked the fact that there was a balance due from plaintiff of $934.86 for that year from the first additional assessment which had been suspended from payment by the claim for credit heretofore referred to, and accordingly when the payments and credits were made as set out above there was left outstanding and unpaid an assessment of $934.86 for 1918. However, when the assessment and overassessment schedules were being considered by the collector in August and September, 1922, both plaintiff and the collector were proceeding on the theory that through the credits and payments to be made plaintiff's tax liability for 1917, 1918, 1919, and 1920 would be settled. At that time the bond to secure payment of the tax for 1918, which was held up from collection by the claim for credit for 1919, was still outstanding, but both the surety company and plaintiff were desirous of having it released. September 2, 1922, the surety company wrote the collector stating that advice had been received from plaintiff that the claim was being adjusted in connection with other years and inquiring whether the bond could be released. The collector replied that evidence of adjustment of the claim had not been received and accordingly that the bond could not be released. September 19, 1922, the surety company forwarded to the collector a letter from plaintiff to the effect that the claim had been adjusted in the accounts for other years and asked what steps should be taken in order to release the bond. September 29, 1922, the collector advised the surety company that the schedule on which the allowance of the claim appeared had been received and that the bond might be released. On the same

day the collector returned the bond to plaintiff with the advice that it could be released since the tax liability for which it was issued had terminated.

In thus releasing the bond, the collector was unaware that through the above adjustments and settlement the outstanding liability of $934.86 for 1918 for which the bond was issued had not been paid, and apparently the same was true of plaintiff, since there is no charge of fraud or bad faith on its part. Late in 1926, almost four years after the bond had been canceled, the collector discovered that the liability had not been satisfied, and accordingly demanded payment from plaintiff. Plaintiff at first refused payment, but, after a warrant of distraint had been issued, plaintiff on July 1, 1927, paid under protest the amount demanded with interest, that is, a total of $1,226.26. On July 6, 1927, plaintiff filed a claim for the refund of the foregoing amount, which was rejected January 31, 1928, and plaintiff duly instituted this suit for its recovery, alleging that collection was barred when made July 1, 1927, and therefore recovery should be had under section 607 of the Revenue Act of 1928 (26 USCA § 2607).

At the outset it should be observed that the amount in question is a tax which was assessed and collected for 1918. The 1918 return was filed June 16, 1919. The statutory period within which assessment and collection could be made was five years (section 250 (d) of the Revenue Act of 1918, 40 Stat. 1082), and therefore, without an extension of some character, it would have expired June 16, 1924. The assessment was timely made July 13, 1921, but the fact that assessment was made within the statutory period does not of itself make valid collection after the statutory period for collection has expired. Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676. Collection could have been made after the statutory period by recourse to the bond, had the bond remained in full force and effect. United States v. John Barth Company, 279 U. S. 370, 49 S. Ct. 366, 73 L. Ed. 743. The bond, however, had been canceled. The first and principal contention advanced by the defendant is that "the cancellation of the bond was void and that the bond should be considered as in effect at the time the payment in question was made." There is no merit in this contention. The basis of the defendant's contention is that the release was due to a mutual mistake of fact, and therefore must be viewed as ineffective. However, whatever mistake occurred could not be chargeable in any sense to the surety company, which must be looked upon as a third party in the transaction. The obligation on the bond was for the surety company to pay a given amount to the United States in the event plaintiff, as principal, failed to pay upon notice and demand from the collector. The bond was secured at the instance of plaintiff on the representation that it owed a given amount of tax to the United States. The surety company was first advised by plaintiff that the tax liability had been satisfied and that therefore the bond could be canceled, but the surety company did not rely on that information as a basis for cancellation; it thereafter applied to the collector for information and was duly advised that the liability had been satisfied. At the same time the collector returned the bond and it was canceled. Under such circumstances, the surety company could not be charged with the mistakes of the collector and the plaintiff. The collector is chargeable with the collection of taxes which have been assessed, and to insure the faithful performance of his duty he is required to give bond. He was therefore not only the proper party to advise the surety company of the status of the liability for which the bond was given, but also the proper party to determine when the bond could be released and authorize its release. To carry the defendant's contention to its logical conclusion it would mean that, in spite of the purported release and cancellation of the bond in 1922, it continued in effect until the tax was paid in 1927 and therefore, had plaintiff failed to pay upon demand in 1927, the surety could have been made to respond under the bond. The answer to such a proposition is well stated in the somewhat analogous case of United States v. Alexander et al., 110 U. S. 325, 4 S. Ct. 99, 101, 28 L. Ed. 166, wherein the court said: "It may be fairly presumed that sureties take indemnity from their principals. We cannot hold that after they have had notice of the discharge of the bond on which they were sureties, and when their relations to their principals may have entirely changed, and their indemnity been surrendered, it is within the power of the secretary of the treasury, without notice to them, to revive the bond and reimpose its obligation upon them." We are accordingly of the opinion that the bond was duly released and was not in effect when collection was made in 1927.

·The further contention is advanced that "in any event plaintiffs are estopped to raise the issue of the statute of limitations." This proposition is not tenable. There is no suggestion that plaintiff was acting in bad faith in asking whether the bond could be released; on the contrary the reasonable conclusion from the record is that plaintiff verily believed that its entire liability was being satisfied for 1917 to 1920, inclusive, with the credits and payments which were being made when the bond was released. There is nothing to indicate that the collector in any way relied upon any acts or representations of plaintiff in releasing the bond; the collector relied upon his own records and the schedules furnished by the Commissioner, which, unfortunately, were in error, but not through any fault, act, or representation of plaintiff.

It should be further observed that the situation here presented is distinguishable from those presented in R. H. Stearns Co. v. United States, 291 U. S. 54, 54 S. Ct. 325, 78 L. Ed. 647, Mahoning Investment Co. v. United States, 3 F. Supp. 622, 78 Ct. Cl. 231, and other related cases where equitable estoppel was applied and recovery not allowed on the ground that a party should not be permitted "to found any claim upon his own inequity or to take advantage of his own wrong" and that a "party ought not to be permitted to repudiate his previous statements and declarations" to the detriment of the opposite party. And in those cases the taxpayer was seeking to open cases which had long been settled whereas in the case at bar, the defendant was the moving party who caused the collection to be made long after the statute had run. The burden is on the party asserting estoppel as a defense to establish affirmatively the facts in support thereof. Helvering v. Brooklyn City Railroad Co. et al. (C. C. A.) 72 F.(2d) 274. That burden is not met by a mere showing of error on the part of the party setting up estoppel even though it be to his detriment.

An element of unfairness may seem to exist on account of the inability of the collector to make a valid collection of an amount which had been timely assessed, but that would likewise be true in any case where the Commissioner has failed to make proper collection within the statutory period. Congress has provided a statutory period when collection can be made and a collector may not proceed contrary thereto. Here the remedy through which collection could have been effectively made was provided by plaintiff but released by the collector without any fault on the part of plaintiff. Collection was then made after the statute had run. Such a collection is an overpayment within the meaning of section 607 of the Revenue Act of 1928, and since a claim for refund was timely filed it is refundable to plaintiff.

The plaintiff is entitled to judgment in the amount of $1,226.26 with interest, as provided by law. It is so ordered.