## FAIRMONT CREAMERY CORPORATION v. HELVERING.

### No. 6678.

United States Court of Appeals for the District of Columbia.

Argued Jan. 5, 1937.

Decided Feb. 15, 1937.

Frank L. Warfield, of Washington, D. C., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and J. Louis Monarch, A. F. Prescott, Sewall Key, Harold D. Thomas, Herman Oliphant, and Louise Foster, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

This is an income tax case. Petitioner is a Delaware corporation with its principal office in Omaha, Neb. Its board of directors adopted a resolution in April, 1929, inviting employees to subscribe to the corporation's common capital stock. The price was to be $26 per share, of which $2 was to be paid in cash. The balance was to be evidenced by notes with interest at 6 per cent., payable quarterly, the principal of the notes to be payable at the rate of 50 cents per share per month. The conditions of the sale were these:

1st, the shares were not to be transferred, assigned, or pledged until fully paid for and until the expiration of four years from the date of issue;

2nd, the certificate to be held in the custody of the corporation for the entire four-year period whether paid for in full or not;

3rd, if the purchasing employees' employment with the company was terminated for any reason within the four-year period, the stock was to be canceled, the corporation to reimburse the purchaser the amount actually paid by him with interest at 6 per cent., less all cash dividends, with interest, received by or issued to him;

4th, cash dividends were to be applied (a) to the payment of interest on the note, (b) then to the payment of due or past-due installments on the note, and (c) if any balance, to the shareholder.

During the year 1930 the dividend rate was 40 cents quarterly, and the total amount of cash dividends withheld by the corporation and applied to interest due on the notes of employee-stockholders was $26,708.63, and the first question is whether this sum constituted taxable income to petitioner for that year. The Board sustained the Commissioner's determination that it did. Petitioner insists that it did not—because under the conditions on which the stock was sold, the sale might not be completed within the four-year period and in that case the contract would be canceled and the corporation would be compellable to repay in full the amount received as interest. Petitioner contends, in short, that the Commissioner's determination loses sight entirely of the fact that the right of the corporation to the retention of the dividends was wholly contingent upon the continued employment of the purchaser for the four-year period.

We agree with the Commissioner and the Board that the items forming the sum of twenty-six thousand odd dollars were income to petitioner.

The agreed statement of facts shows that the corporation sold the shares of stock and received an interest-bearing note for the balance of the purchase price and was entitled to claim and receive interest thereon, and the employee-stockholder was entitled to receive in cash or as a credit on his note the dividends declared by the corporation. The shares of stock to which each employee subscribed were actually issued, though held in the treasury of the company, and in the declaration of dividends were treated like the shares of any other stockholders. In these circumstances we are of opinion that the amount which the company received as interest on the notes held by it is no less income because at some future date conditions may arise, i. e., the employee may quit the employment or the employer may discharge him—as a result of which it would have to refund the whole or a part.

In Blum v. Helvering, 64 App.D.C. 78, 74 F.(2d) 482, 484, we said:

" * * * It is now the settled law that if a taxpayer derives a profit without any restriction as to its disposition, he has received income and is required to return it in the year when received, even though it may still be claimed he is not entitled to retain the money and even though he may be ultimately adjudged liable to restore its equivalent."

In the present case, as we have seen, the employee may prior to the four-year period leave the corporation and receive back all the money he has paid with interest, and the same result will occur if the employer discharged the employee, or if the employee dies. But under the rule these contingencies do not operate to postpone the taxability of income payments received in one year, to another. The transaction as we have outlined it was a sale of stock for cash and credit. That it might be frustrated before final delivery of the certificates does not so change its nature as that interest paid from year to year on the credit notes, is any the less income in the year in which paid. See North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197.

2nd. The next question urged arises out of adjustments in connection with employee subscriptions which were canceled during 1930. The sum involved is $4,120.80 and represents, as considered by the Commissioner and the Board, reversions to the corporation of the dividends declared and paid or credited to the account of employees whose stock subscription contracts were canceled during 1930. The Board, treating of this item, said:

"The reverted dividends and interest on the cancelled stock subscriptions stand in no different position from those on the other subscriptions. The items of $4,120.80 and $146.38 constitute taxable income and the $1,305.87 and $2,981.67 items are deductible."

The $146.38 item referred to by the Board represents interest charged against the several defaulting employee stockholders upon dividends which they received or were credited with and which under the agreement they were required to return to the corporation with interest upon cancellation of their contracts. Petitioner collected this item, and undoubtedly it constitutes taxable income. The $1,305.87 item is the aggregate amount of all the interest credited to this same class of stockholders on installment payments and by the contract was returnable to them on cancellation; and the $2,981.67 item is the aggregate of the amounts of interest charged against the several employee stockholders on the notes executed by them to the company for the

deferred purchase price of the stock. Petitioner's bookkeeping theory of these items is impossible to follow, as is also Commissioner's revised method, but it appears that as to the item, $1,305.87, petitioner debited this to profit and loss and deducted it in its income tax return for 1930. The item of $2,981.67 petitioner debited to the general interest income account and charged it off in its income tax report in computing the total interest income shown on the return. The item of $146.38 petitioner reported as taxable income, and the $4,120.80 item was treated by the petitioner on its income tax return as nontaxable income. Respondent in the deficiency notice allowed the deduction of the two items $1,305.87 and $2,981.67, amounting together to $4,287.54, but on the other hand added the item of $4,120.80, which petitioner had reported as nontaxable income, and the item of $146.38 to petitioner's taxable income—thereby increasing petitioner's taxable income to the extent of $4,120.80; and the Board sustained this ruling.

Petitioner, now argues that the Commissioner and the Board lost sight of the fact that the $4,120.80 item represents dividends which the company first credited and then took back from the defaulting stockholders and that the corporation had already paid a tax on the entire amount of money representing these dividends. Petitioner says that the situation is comparable to a refund of federal income taxes which, when received, does not constitute taxable income.

In the view we take of the matter, we have no occasion to disturb ourselves with the intricacies of proper bookkeeping methods in the handling of these items. We have here a case in which an agreement was made by petitioner to sell its stock to its employees on an installment basis covering a period of four years. At the end of the period, if the employee was still in the employ of the petitioner and had paid for his stock in full with 6 per cent. interest on the deferred payments, he was entitled to receive the shares for which he had paid. If he died, was discharged, or quit, he was entitled to have back with interest all the money he had paid in, and petitioner was entitled to have back from him with interest all the dividends which had been paid to him prior to the cancellation or revocation of the contract. In short, the parties were to be put in statu quo ante. Taking the case of one of the defaulting employees as typical of the whole, the situation that

develops is this: A purchased 10 shares of stock on which he paid in cash at the rate of $2 per share, or $20. He executed his note for the balance and continued to pay the agreed installments and the agreed interest from month to month until he had paid or received credits (principal and interest) amounting to $120.38. The interest on that sum, calculated from dates of payment at 6 per cent. equals $6.11, and under the agreement with petitioner on the termination of the agreement the amount payable to him was $126.49. But A had received as a credit from petitioner during the period mentioned, in quarterly dividends, a total of $20 which, under the agreement he was required to return with interest. The interest amounted to 85 cents. Hence petitioner was only liable to return to A the difference between $126.49 and $20.85, or $105.64, and this was the amount of the settlement. But it also appears that the total amount received by petitioner from A on account of principal payments on the stock was $105.00, so that the result, after balancing the items of interest and dividends, is a net loss to petitioner on account of the transaction, from beginning to end, of 64 cents; and that last item, in the case of all the defaulting employee-stockholders, aggregated the sum of $20.36. And that amount the Commissioner and the Board allowed as the deductible sum of this phase of the contract. And we think—by whatever bookkeeping method the result is reached—the answer obviously is correct. In short, that the net loss to petitioner on account of the sale by it to its employee-stockholders who defaulted in the year 1930 and whose purchase money, with interest, was repaid to them and whose stock was canceled and the dividends thereon returned, amounted to the sum of $20.36. Except for this item, there was neither gain nor loss because, except for this item, petitioner neither paid out nor received in 1930 any net sum whatever on account of the frustrated contract.

▮ 3rd. Petitioner claims that the Commissioner and the Board erred in disallowing $958 of contributions made to religious and charitable institutions in 1930.

As to some of the items, the Board held that there was no evidence of benefit or anticipation of benefit to petitioner either directly or indirectly, and we concur in this conclusion.

As to two of the items, the Board found that, though the donations were made to

enable the company to carry on its business and retain its customers, it failed to show any ultimate benefit arising from these contributions, for which reason they were not allowable. We are of opinion that the holding of the Board in this respect is within too narrow a compass.

The controlling regulation (Art. 262, Treasury Regulations 74) provides:

"Donations which legitimately represent a consideration for a benefit flowing directly to the corporation as an incident of its business are allowable deductions from gross income."

The facts as to the contribution of $250 to the Y. M. C. A. in Omaha are that Mr. Peterson, the president of the Peterson Baking Company, insisted that petitioner make this donation. He was one of the directors of the Y. M. C. A.. The baking company was one of petitioner's best customers, its business amounting to between $20,000 and $25,000 annually; and the donation was made expressly for the purpose of enabling the company to retain this business, and it did retain it.

The donation to Briar Cliff College, a Catholic institution, was made at the solicitation of St. Joseph's Hospital, an affiliated Catholic institution, which asked for $500 on the ground that petitioner had been favored with its business. Petitioner satisfied this demand with a donation of $200 and retained the business of the hospital, which amounted to between $3,000 and $3,500 a year.

In Regulations 74 under the Revenue Act of 1928, page 87, various illustrations are given of the applicability of the donations section. One of them is this:

"For example, a street railway corporation may donate a sum of money to an organization intending to hold a convention in the city in which it operates, with the reasonable expectation that the holding of such convention will augment its income through a greater number of people using the cars."

This is said to be a donation which legitimately represents a consideration for a benefit flowing directly to the corporation as an incident of its business and is allowable as a deduction from gross income. The two items mentioned above, we think, much more nearly represent a consideration for a benefit flowing to the corporation as an incident of its business, and the best considered opinions of the Board of Tax Appeals sustain this view. See Killian Company, Petitioner v. Com'r, 20 B.T.A. 80, 84; Yamhill Elec. Co., Petitioner v. Com'r, 20 B.T.A. 1232.

In reaching this conclusion, we are not reviewing the Board's finding of facts. The facts as we have stated them are undisputed, and the rejection of the Board member was reached on the conclusion of law to which we have called attention and which, as we think, was a too narrow construction of the law.

The holding of the Board will be in all respects affirmed, except that it will be modified to the extent of allowing the two deductions aggregating $450; and, as modified, will be remanded to the Board with instructions to determine the tax accordingly. Costs will be assessed against petitioner.