**GRAND CENTRAL PUBLIC MARKET, Inc., v. UNITED STATES.**

District Court, S. D. California,
Central Division.

Jan. 12, 1938.

Clark J. Milliron and George H. P. Shaw, both of Los Angeles, Cal., for plaintiff.

Peirson M. Hall, U. S. Atty., Alva C. Baird and E. H. Mitchell, Asst. U. S. Attys., and Eugene Harpole, Sp. Atty., Treasury Dept., all of Los Angeles,. Cal.

JENNEY, District Judge.

This action is brought to recover income taxes alleged to have been illegally assessed and collected by the Commissioner of Internal Revenue or his agents. Jury trial was waived and the case was submitted, in part on stipulated facts and in part on oral testimony.

Plaintiff corporation, Grand Central Public Market, Incorporated, had been for some time previous to 1925 engaged in the business of leasing market space and subletting this space, after dividing it into stalls or concession booths, to tenants who sold produce. Subleases were for periods of from five to ten years—usually five. Prior to 1925 no bonus agreements were executed, but in that year plaintiff demanded from subtenants bonus payments, in cash or partly in cash and the balance in interest-bearing notes; in consideration of which plaintiff agreed to hold space for delivery to such subtenants on November 1, 1929, for occupancy thereafter. These bonus agreements were in writing and contained the following clauses:

"If for any reason whatsoever the undersigned is unable to execute said lease, or deliver possession of said premises, without 'fault of the holder hereof, it shall be relieved from any and all liability hereunder upon repayment to holder, without interest, of the amount paid hereunder. In the event of failure of holder to make payment as herein provided, or to comply with any of the provisions hereof, this option shall forthwith terminate, and all money paid hereunder prior thereto shall be retained by the undersigned. Time is expressly made of the essence hereof.

"No sale, assignment, hypothecation, pledge, or other transfer hereof, by opera-

tion of law or otherwise, shall be made without the written consent of the undersigned in each case first had and obtained, and any such sale, assignment, hypothecation, pledge or other transfer, shall be null and void, and shall ipso facto act as a forfeiture of all rights granted by the undersigned hereunder. Neither this option, nor any interest in said premises hereunder, shall be deemed an asset in any Bankruptcy or Receivership proceedings, and all rights of the holder hereof shall forthwith terminate upon the institution of any such proceedings."

Collections prior to the year 1929 under said bonus agreements, for leases to be effective in 1929, were as follows:

| Year | Amount |
|------|--------|
| 1925 | $138,950.00 |
| 1926 | 66,750.00 |
| 1927 | 16,095.00 |
| 1928 | 20,000.00 |
| Total | $241,795.00 |

None of these bonus payments or the interest thereon, as received, were entered in the general account books of the plaintiff but were recorded in a separate ledger called the "bonus ledger." Nor were bank deposits from these collections made in the corporation's regular commercial accounts, but were deposited in a special interest-bearing account in the United States National Bank in Los Angeles. The interest on these bonus collections, together with interest on notes given by subtenants in lieu of cash, aggregated during the years 1925 to 1928, both inclusive, the sum of $35,827.73. During the year 1929 these interest collections amounted to the sum of $13,337.42, making a total of $49,165.15. All interest items were deposited in or credited to the special bank account, and were also entered in the bonus ledger.

As of November 1, 1929, all bonus moneys, together with the interest collected thereon, were for the first time recorded in the corporation's general books of account, being then transferred from the bonus ledger. At this time also there was transferred the sum of $46,000 and interest in the amount of $712.74, received by plaintiff during the year 1929 on account of bonus agreements for the leasing of space to be occupied by subtenants in the year 1934. These 1929 bonus collections had likewise been previously entered in the bonus ledger.

Plaintiff corporation did not include in its federal income tax return for any of the years from 1925 to 1928 amounts received by it during those respective years on account of such bonus payments or interest. Plaintiff, however, did include, in its income tax return for the year 1929, all of such sums so received in years prior to 1929 and, in addition thereto, all bonus and interest payments received during the year 1929, in connection only, however, with contracts for delivery of space during that year of 1929. Plaintiff did not include in its income tax return for 1929 any bonus or interest payments received on account of contracts for delivery of space in 1934.

The total of such bonus receipts and interest, so accounted for in the 1929 income tax return, which was filed on March 11, 1930, was $291,560.15. The return showed other net income for 1929 of $42,-998.19, or a total net income, including the bonus and interest receipts, of $334,-558.34. Plaintiff's total income tax payments for that year, including the tax on all bonus receipts returned for taxation, were as follows:

| Year | Amount |
|------|--------|
| March 11, 1930 | $ 9,200.36 |
| June 4, 1930 | 9,200.36 |
| Sept. 8, 1930 | 9,200.35 |
| Dec. 8, 1930 | 9,200.35 |
| Total | $36,801.42 |

The evidence shows that on June 8, 1925, the corporation recorded a resolution in its minute book, listing all of the various spaces available for lease and directing that all Agreements for Leases, to be executed for the period from 1929 to 1939, should be made only upon the payment of certain bonuses listed in said resolution. The plan and schedules of leases attached lists over 70 tenants with individual bonuses up to $10,000, and an aggregate bonus expected of $242,000.

On the 13th day of July, 1925, the corporation recorded in its minute book a resolution directing that funds realized from bonus accounts and funds received as deposits on leases, for the period from 1929 to 1939, be deposited in the United States National Bank in Los Angeles.

On the 11th day of January, 1926, the corporation recorded in its minute book a resolution stating that the corporation was then offering to its tenants agreements

for leases from and after November 1, 1929, and was receiving under said agreements certain moneys, with the understanding that they were to be returned to tenants in the event the corporation should thereafter be unable to deliver possession, and directing that all of said funds be held by the corporation in a "special trust account" in the United States National Bank in Los Angeles, and further directing that any of said "trust funds" as the finance committee of the board might deem advisable should be loaned by the corporation upon such terms and security as said finance committee might determine.

On the 14th day of March, 1927, the corporation recorded in its minute book a resolution discharging its then existing leasing committee and requiring that all future applications for leases or transfers be presented directly to the board of directors for approval before such contracts were made. Thereafter, there was recorded in the minute book every bonus agreement for leases to be made in the future, disclosing in each instance the name of the tenant, the stall leased, the term of the agreement, and the conditions of bonus payments. The plaintiff's minute book contains minutes of directors' meetings held during the period from June 4, 1925, to October 14, 1929, spread over pages numbered consecutively from page 47 to page 92. In these minutes are recorded transactions in connection with the bonus agreements in question covering 25 pages of that minute book.

Revenue Agent Carl A. Wolfe made an examination of plaintiff's books in June, 1928, checking the tax return for the year 1926. Revenue Agent Claude A. Dewey made a similar examination in March, 1930, covering the year 1928, and Charles S. Murphy made his examination in October, 1931, covering the year 1929. This last examination was made at the express request of plaintiff in response to a letter, dated May 28, 1931, advising the Commissioner of Internal Revenue that the income tax returns of the corporation had theretofore included certain items of income, growing out of leases and being in the nature of bonuses and interest, which had not been correctly reported in the proper years.

In filing its income tax returns for 1931, plaintiff taxpayer discontinued its previous practice, and included in its return for that year all bonus payments and interest actually collected in that year, even though a large part thereof was on account of bonus agreements for delivery of space in 1934. When another revenue agent, O. H. Whitney, made an examination of the books for the year 1931, he objected to this practice and recommended the reversal of said items of bonus receipts and the exclusion thereof from taxable income, for the express reason that such income should have been considered as "deferred income in accordance with procedure in prior years."

On page 11 of Revenue Agent Whitney's report on the 1931 return (Plaintiff's Exhibit 6) appears the following:

"(a) item. The taxpayer reports the amount of new bonus agreements as shown Exhibit E $11,500.00
Less, Bonus agreements cancelled, 5,250.00

Income reflected by return not on books $ 6,250.00

"As these amounts cover bonus on leases for the years 1934 to 1939, the examiner has considered the new agreements as deferred income and as the cancelled bonuses would of necessity apply to the same period they would be unearned. These two items would, therefore, in neither event be taxable currently.

"See argument covering leases and bonus agreements in prior examiner's reports covering 1929 and 1930."

Thereafter, on December 28, 1933, following Agent Whitney's report, the collector of internal revenue tendered to the plaintiff a check in the sum of $2,351.95, tax and interest, on account of income tax alleged to be overpaid for said year of 1931, and the Commissioner of Internal Revenue issued a certificate of overpayment because of alleged excess tax for that year; due in part to the elimination from taxable income of amounts received in that year on account of agreements to deliver possession of premises to tenants in 1934. Plaintiff refused to accept the proffered refund check.

On March 8, 1932, plaintiff had filed, as a prerequisite to this suit, a claim for refund with the collector of internal revenue, in the amount of $25,400.10, which claim was, on November 9, 1932, rejected by the Commissioner and notice thereof served forthwith. The grounds for denial were as follows:

"The income from bonuses is deemed to have been received and earned in the year 1929 as shown by the books and correctly reported in return for that year.

"The income from interest is also treated as having been earned at the same time the bonuses were credited to income, and has been correctly reported in the 1929 return."

Both Revenue Agents Wolfe and Dewey testified at the trial that they had no recollection of whether or not they had examined the minute book of the plaintiff when they made their examinations in 1928 and 1930, respectively. Mr. Wolfe testified that he may have examined the minute book and that such action was customary in corporate examinations. Auditor Brown of plaintiff company, however, testified that Revenue Agent Wolfe examined the "journal, ledger, and minute book" in 1928, and that he, Brown, discussed the matter of bonus payments with Revenue Agent Dewey prior to March 11, 1930. Mr. Dewey could not recall the conversation. Special agent, Charles S. Murphy, of the Bureau of Internal Revenue, testified that examination of the minute books, as well as the books of account and balance sheets, was an ordinary part of a regular corporate examination; and that he discussed the bonus matters with plaintiff's attorney in October, 1931; at which time all items of bonus receipts and bonus interest had been transferred to the general ledger.

The facts present for the consideration of the court the following problems:

(1) Were payments received by the plaintiff in years prior to 1929, as bonuses on account of agreements to place subtenants in possession in the year 1929, taxable as income in the years prior to 1929, when such payments accrued and were received; or were they subject to income taxes in the year 1929, when possession of the leased premises contracted for was actually delivered to such subtenants?

(2) Were interest payments, accrued and received prior to 1929 on notes given for contracts to execute leases to take effect in 1929, and interest earned and paid by the deposit bank on bonus payments made on account of agreements for such leases, taxable as income in the year 1929 when possession of the leased premises was actually delivered?

(3) Were bonus payments received by plaintiff in 1929, on account of agreements to enter into leases in 1934, taxable as income in the year 1929 when they accrued and were received, or were they subject to income tax in the year 1934 when possession of the leased premises contracted for was actually delivered to such subtenants?

(4) Were interest payments accrued and received in the year 1929, on notes given for contracts to execute leases to take effect in 1934, taxable as income in the year 1929 when they accrued and were received, or were they taxable in the year 1934 when possession of the leased premises was actually delivered?

(5) Is the plaintiff corporation estopped under the facts disclosed?

Income is taxable on the basis of fixed annual accounting periods and anything that is income within a given period is taxable in that year and no other. Bonus or other advance payments for the execution of a lease are taxable income in the year of receipt, whether tax returns are made on a cash receipts or on an accrual basis. As stated in the opinion of the United States Circuit Court of Appeals for the First Circuit, in the case of United States v. Boston & Providence R. R. Corporation, 37 F.2d 670, 672, 8 A.F.T.R. 10007 (pars. 1, 2): "An amount paid in advance as rental, or as a bonus for a leasehold interest, may be prorated by the lessee in computing his income tax over the period of the term, upon the ground that the interest acquired is an exhaustible capital asset, Galatoire Bros. v. Lines (C.C.A.) 23 F.2d 676; Alland & Bros., Inc., v. United States (D.C.) 28 F.2d 792, or is a part of the rental; but, as to the lessor in computing his tax, it is treated as income in the year in which received. O'Day Investment Co. v. Commissioner of Internal Revenue, 13 B.T.A. 1230; Miller v. Gearin (C.C.A.) 258 F. 225; Cryan v. Wardell (D.C.) 263 F. 248."

The United States Supreme Court has stated: "The net profits earned by the property in 1916 were not income of the year 1922—the year in which the litigation with the government was finally terminated. They became income of the company in 1917, when it first became entitled to them and when it actually received them. If a taxpayer receives earn-

ings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 615, 76 L.Ed. 1197, 1200, 11 A.F.T.R. 16. See, also, Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, 11 A.F.T.R. 1085; Board v. Commissioner, 6 Cir., 51 F.2d 73, 10 A.F.T.R. 192, certiorari denied 284 U.S. 658, 52 S.Ct. 35, 76 L.Ed. 557; Helvering v. Morgan's, Inc., 293 U.S. 121, 55 S.Ct. 60, 79 L.Ed. 232, 14 A.F.T.R. 681; Cadwalader, Jr., v. Commissioner, 32 B.T.A. 1157, reviewed in 3 Cir., 88 F.2d 274, C.C.H.(1937) 373, Case 9099, certiorari denied 301 U.S. 706, 57 S.Ct. 940, 81 L.Ed. 1360.

Income tax returns of plaintiff for the years in question were filed as follows:

| 1925 | March 11, 1926 |
| 1926 | Jan. 28, 1927 |
| 1927 | Mar. 5, 1928 |
| 1928 | Mar. 5, 1929 |

The statute of limitations for the assessment of additional taxes for these years expired, respectively, on March 11, 1929, January 28, 1930, March 5, 1931, and March 5, 1931. The statute of limitations relating to the years 1925, 1926, and 1927 is found in the Revenue Act of 1926, as follows:

"Sec. 277. (a) Except as provided in section 278—(1) The amount of income taxes imposed by this Act shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

"(2) The amount of income, excess-profits, and war-profits taxes imposed by the Revenue Act of 1921, and by such Act as amended, for the taxable year 1921 and succeeding taxable years, and the amount of income taxes imposed by the Revenue Act of 1924, shall be assessed within four years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period." 44 Stat. 58.

Section 275 (a) of the Revenue Act of 1928, 45 Stat. 856, 26 U.S.C.A. § 275 note, curtailed the period of limitation for the purposes of assessment to two years as to taxes covered by that act.

It will thus be noted that no collection can be made in this case without assessment; and that the statutory period has, in each instance, expired, so that no assessment may now be made.

Defendant concedes the soundness of the general proposition of law that income is taxable on the basis of fixed annual accounting periods, and that anything which is income within a given period is taxable in that year and no other. It contends, however, that this rule applies only where the bonus or advance payments are received free and clear of any restriction; and calls attention to two elements which seem to it restrictive: (A) The special bonus agreement—the pertinent paragraphs of which have been hereinbefore quoted—provides that, if for any reason the plaintiff is unable to execute the lease or deliver possession, it is only to be relieved from liability thereunder upon repayment to the sublessee of the bonus payment without interest; (B) The bonus and interest payments in question were not mingled with other funds of the plaintiff corporation but were deposited in a special and distinct bank account. Defendant claims that by the wording of plaintiff's corporate minutes, hereinbefore described, the corporation declared itself to be a mere trustee of these funds, i. e., that these moneys were simply held in trust and were not considered taxable income until the happening of a certain contingency; namely, the taking over, on November 1, 1929, of the leased space by tenants, under the terms of their subleases.

As to (A): It must be noted that the clauses in the agreement, which seem to defendant to be so restrictive as to make an exception to the rule, are conditions subsequent and not conditions precedent to the attaching obligation. There are two of such conditions subsequent: One by which it is provided that the damages to be paid by plaintiff, in the event of its failure to deliver possession at a future date certain, shall be a sum equal to the bonus payment originally made by the subtenant under the contract; the other condition subsequent provides for the damages to be borne by the subtenant, in the event of his failure to assume possession on said future date. Neither of

these conditions alter the fact that the amounts paid by subtenants were due and payable and therefore accrued at the time the contracts were signed; and the evidence shows that they were actually received by plaintiff at that time. They thus became subject to income tax in the year or years of such actual receipt. North American Oil Consolidated v. Burnet, supra; Fairmont Creamery Corporation v. Helvering, 67 App.D.C. 66, 89 F.2d 810; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed 1200, 13 A.F.T.R. 1164.

It is worthy of note that even in one of the cases cited by defendant in support of its position, the court declared: "The cases cited by the government in support of its contention are instances in which the condition was precedent to any obligation attaching. Here the condition is a condition subsequent. Acting upon the presumption that all contracts will be observed and not broken [citing cases] the Revenue Department has been accustomed to deal with such contingencies when they occur, and to treat such obligations and bills or accounts receivable as income in the year in which they are received, although upon certain contingencies, which may not occur, the full amount or cash value thereof may never be realized. [Citing cases]." United States v. Boston & Providence R. R. Corporation, supra.

■ As to (B): The corporate minutes of plaintiff directed that all bonus funds were to be deposited in a special trust fund account and were to be controlled by the finance committee of its board of directors and invested by that board at its discretion. We cannot construe this resolution as setting up a trust in the hands of the directors of the finance committee, for the benefit of any subtenants who, by failure of the plaintiff to fulfill its contract, might become entitled thereto as beneficiaries. If any trust resulted from the resolution and action thereunder, was it not a trust in which the finance committee acted as a trustee for the benefit of the corporation itself? We think so. The contract itself shows a possible ultimate position of debtor and creditor. It is a contract by which the plaintiff sought merely to determine and limit its possible liability, in case of a future failure thereunder on its part. The bonus moneys were paid by each subtenant to plaintiff as a present consideration for plaintiff's agreement to do something in the future; namely, to deliver possession of certain premises under lease. What the subtenant in effect said in the contract, in connection with these bonus moneys, was this: "If you do not deliver possession to me as agreed, pay me back the money I have paid you." This means nothing more than: "Pay me back the equivalent of what I have paid you." The subtenant did not ask for an escrow of these funds or that he be paid back the identical money which he had paid over, neither did he ask for a special trust deposit. As far as the evidence shows, he knew nothing about the existence of the special account in the United States National Bank. Nor was there anything to prevent plaintiff from withdrawing these so-called trust funds from the bank at any time after their deposit, and then using the money for any other corporate purpose. The relationship between the parties does not create a trust. American Surety Co. v. Bank of Italy, 63 Cal.App. 149, 161, 218 P. 466; In re Sun Drug Co., Sabin v. Acme Inv. Co., 9 Cir., 4 F.2d 843, 844; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, 18 A.F.T.R. 1132; Ramish v. Workman, 33 Cal.App. 19, 164 P. 26.

■ In addition, defendant contends that plaintiff is precluded from changing its method of accounting in regard to bonus payments and its method of reporting said payments for income tax purposes, without obtaining consent of the Commissioner of Internal Revenue. Section 41 of the Revenue Acts of 1928, 45 Stat. 805, and 1932, 47 Stat. 185, respectively, 26 U.S.C.A. § 41 and note (which are substantially the same as section 212(b) of the Revenue Act of 1926, 44 Stat. 23) provides as follows:

"§ 41. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is oth-

er than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

Article 41-1 and 2 of Regulations 86 interprets the foregoing statute. The obvious purpose of the statutory provision and of the Regulations is to require consistency in the reporting of income and to prevent a taxpayer from evading tax liability by changing its method of accounting and of reporting income after the statute of limitations has precluded the government from making any adjustment as to prior years. It is conceded here that no application was made to the Commissioner for permission to change plaintiff's system of accounting and no agreement has been made or entered into as provided by the Regulations setting forth terms and conditions under which such a change can be effected.

We do not feel that plaintiff has, within the meaning of the act, changed its accounting methods, as charged by the defendant, so as to require any permission from the Commissioner. Article 41 of the Regulations indicates the type of change of "method of accounting" which the act is designed to cover. Plaintiff here has consistently reported its income on an accrual basis; there has been no change from a calendar to a fiscal year; no change of the basis of inventory valuation has occurred; no question is presented involving the reporting of income on the so-called long term contract method or installment plan—in fact, there has been shown no such change as would require such permission from the Commissioner under the provisions of the Revenue Act. The income in this case is clearly taxable in the year of its accrual and receipt; and no change of accounting method could in any way affect the taxability of that income.

Answering then, categorically, the first four questions previously propounded: (1) Bonus payments received prior to the year 1929 are taxable as income in the year in which the same accrued and were received, (2) interest payments in question accrued and received prior to 1929 are taxable in the year in which the same accrued and were received, (3) bonus payments received in 1929, whether on account of agreements to enter into leases in that year or in the year 1934, are tax-

able in the year 1929 when they accrued and were received, (4) interest payments in question, accrued and received in 1929, are taxable in 1929.

However answers to these four questions are only correct and final provided we answer the fifth question in the negative; and hold that plaintiff corporation is not estopped under the facts disclosed. Briefs on both sides are lengthy and comprehensive. They attempt an exhaustive study of the general subject of equitable estoppel as applied to income tax matters, and many cases are cited which, at first blush at least, seem irreconcilable. The rules governing this subject are, however, so general and are subject to such innumerable qualifications that it is only to be expected that there should be some clashing in legal conclusions derived from somewhat similar factual situations. Let us therefore, as briefly as possible under the circumstances, analyze the government's position and examine the principal authorities cited by counsel in support thereof.

Defendant's contention appears to be that it is immaterial whether or not plaintiff's actions in making its returns prior to 1929 constitute an "equitable estoppel," a "waiver," a "ratification," an "acquiescence," or an "election ripening into an equitable estoppel," or otherwise; plaintiff's liability is based upon those broad equitable principles which courts of law will recognize; namely, that a taxpayer with full knowledge of the facts should not be permitted to act in a manner inconsistent with his former position or conduct, so as to deprive the government of revenue to which it was, at least at one time, entitled. The following cases are then cited in support of this general proposition: (1) Comr v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, 11 A.F.T.R. 488; (2) Askin & Marine Co. v. Com'r., 2 Cir., 66 F.2d 776, 12 A.F.T.R. 1306; (3) Houston Production Co. v. U. S., D.C., 4 F.Supp. 715, 12 A.F.T.R. 1441; (4) Burnet v. San Joaquin Fruit & Inv. Co., 9 Cir., 52 F.2d 123, 10 A.F.T.R. 399; (5) Mahoning Inv. Co. v. United States, 3 F.Supp. 622, 78 Ct. Cl. 231, 12 A.F.T.R. 1030; (6) Stevens Mfg. Co. v. United States, Ct. Cl., 8 F.Supp. 720, 14 A.F.T.R. 1002; (7) Moran v. Com'r, 1 Cir., 67 F.2d 601, affirming 26 B.T.A. 1154, 13 A.F.T.R. 356; (8) White v. Stone, 1 Cir., 78 F.2d 136, 16 A.F.T.R. 322; Stone

v. White, 296 U.S. 550, 56 S.Ct. 245, 80 L.Ed. 389; Id., 298 U.S. 646, 56 S.Ct. 950, 80 L.Ed. 1377.

Let us critically examine these cases, with particular reference to the fundamental principles behind them, and see if after all they are not distinguishable. Equitable estoppels are invariably invoked in order to further equity and justice in a given case—by preventing a party from asserting his rights under a technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth.

Many income tax cases arise involving estoppel since income is taxable on the basis of fixed annual accounting periods, as hereinbefore shown. Because of that fact, and because there is in the income tax law a statute of limitations, it is quite natural for a taxpayer to try to show that income was taxable in some year as to which the statute of limitations bars any assessment or collection whatsoever. But the courts have quite generally afforded relief to the government, by invoking the doctrine of estoppel in those cases where the taxpayer has, by his past conduct, induced the government to forego some right or remedy which it would have asserted had it not been for the action or representation, express or implied, of the taxpayer. Relief is perhaps most frequently afforded in instances where the taxpayer tries to claim that a deduction—which he has already used to reduce his tax in a prior year, now sufficiently removed so that any additional assessment is barred by the statute of limitations—should really have been considered in a later year, as to which he again attempts to use the deduction. Com'r v. Liberty Bank & Trust Co., (1) supra; Askin & Marine Co. v. Com'r, (2) supra. See, also, Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733, 8 A.F.T.R. 10901.

The principle behind these cases involving deduction is rather one of election than of equitable estoppel. In estoppel the taxpayer is bound, not because he has chosen, as in election, to follow a certain course, but because otherwise his action would prejudice an innocent party. The taxpayer may elect to deduct an item if the prerequisites to deductibility have occurred and, having so elected, he cannot subsequently rescind his action. Moran v. Com'r, (7) supra. See, also, Com'r

v. Moore, 10 Cir., 48 F.2d 526, 9 A.F.T.R. 1151.

Some of the cases cited by defendant involve ratification, acquiescence, waiver, or consent. In these instances there is usually an attempt to repudiate previous waivers or consents, or the taxpayer has accepted defective procedure, without protest, and is precluded from relying on the defect. In such cases the taxpayer is bound because he intended to be bound; while under estoppel he is bound because the other party would be unjustly prejudiced unless the courts treated him as bound. Mahoning Inv. Co. v. United States, (5) supra; Com'r v. New York Trust Co., 2 Cir., 54 F.2d 463, 10 A.F.T.R. 928, certiorari denied 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945; R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647, 13 A.F.T.R. 842; Lucas v. Hunt, 5 Cir., 45 F.2d 781, 9 A.F.T.R. 690; Houston Production Co. v. United States, (3) supra.

Then we find cases where compromises or settlements have been made, instituted or willingly accepted by a taxpayer who later attempts to attack them because of mistake of law. In these instances the taxpayer is told, in language of estoppel, that he must abide by his original commitment. It should be noted in this connection that the taxpayer before us declined to accept the government's proffer of a refund. Stevens Mfg. Co. v. United States, (6) supra; Stern Bros. v. United States, Ct. Cl., 8 F.Supp. 705, 14 A.F.T.R. 987; Matern v. Com'r, 9 Cir., 61 F.2d 663, 11 A.F.T.R. 979.

Likewise relief frequently has been afforded the government when one corporation has transferred its assets to another corporation and has then been dissolved; the notice of deficiency in tax payment has been improperly delivered or addressed and the successor corporation then asks for a redetermination of the tax liability. It then contests the matter and attempts to deny liability for any tax—when because of lapse of time it is too late for the government to proceed properly under the facts disclosed. Burnet v. San Joaquin Fruit & Inv. Co., (4) supra; Com'r v. New York Trust Co., 2 Cir., 54 F.2d 463, 10 A.F.T.R. 928, certiorari denied 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945.

Counsel for defendant quotes profusely from Mahoning Investment Co. v. United

States, (5) supra. In that case the parent corporation, Mahoning Investment Company, filed a single consolidated income tax return, tentatively, on behalf of several subsidiaries; with the statement that each subsidiary would make a separate return at a later date. Practically all of the taxable income arose from the earnings of one company in the group, but the holding company had no appreciable taxable income. Waivers of the statute of limitations were filed by the several subsidiaries. The Commissioner determined that an additional tax of some $250,000 was due, notice of which was sent to the parent corporation, and adjustment was made with the agents representing both parent and subsidiary. An assessment of adjusted balance was made against the parent corporation and the subsidiary wrote that it would pay the same—which it did. The court held, in an action by the parent and subsidiary to collect the amount of tax paid, that the parent was not entitled to collect as it had paid no tax, and that the subsidiary was not entitled to a refund because it had consented to the assessment and would not be heard to object to the propriety of the proceeding. In other words, there was here a waiver and a consent. The Mahoning Case was further explained in Wilson & Company, Inc., v. United States, 15 F.Supp. 332, 82 Ct.Cl. 261; Combined Industries v. United States, 15 F.Supp. 349, 83 Ct.Cl. 613; Anderson v. United States, 15 F. Supp. 216, 83 Ct.Cl. 561; Estate of William Steele v. Com'r, 34 B.T.A. 173, and Brewerton v. United States, 9 F.Supp. 503, 80 Ct.Cl. 529.

Defendant then calls particular attention to those decisions which hold that the Commissioner of Internal Revenue necessarily must rely upon the representations of the taxpayer and is not compelled to look with suspicion upon all such representations and himself examine, or cause to be examined, in minute detail the taxpayer's books and records; that it is the primary duty of the taxpayer to deal fairly and truthfully with the government; and the officers of the government have a right to assume that a taxpayer will do his duty and will make truthful and correct returns. Com'r v. Liberty Bank & Trust Co., (1) supra; Askin & Marine Co. v. Com'r, (2) supra; Haag v. Com'r, 7 Cir., 59 F.2d 514, 11 A.F.T.R. 533, affirming 19 B.T.A. 982. We do not believe that on principle these cases support the position of defendant here.

Let us reexamine the facts before us, remembering that the burden of proving every essential element of an estoppel is upon the party seeking to assert it. William C. Van Antwerp v. U. S., 9 Cir., 92 F.2d 871, decided November 11, 1937; Hull v. Com'r, 4 Cir., 87 F.2d 260, 18 A.F.T.R. 758. We call particular attention to the fact that in the case at bar the means of knowledge was available to both parties. Plaintiff's minute book, which shows clearly the existence and method of handling these bonus payments, was available at all times for the inspection of the government. The testimony shows that the revenue agents made at least two examinations of plaintiff's books on or prior to March 13, 1930; and that it was customary for revenue agents to examine the minute books of a corporation during such income tax examinations. Although neither of these revenue agents could remember, definitely, whether or not he had examined plaintiff's minute book, neither denied such examination, and Auditor Brown of the corporation testified that Agent Wolfe had actually made such an examination in 1928. In any event the court may safely assume—particularly as against the Commissioner—that the government official performed his duties and ascertained all of the necessary facts.

There is here then no charge of, or attempt to prove, fraud or fraudulent concealment on the part of the taxpayer. As a matter of fact the various revenue agents and the office of the Commissioner of Internal Revenue seemed to have held consistently to the theory that the bonus income and interest were not part of plaintiff's taxable income in the respective years prior to 1929; and that similar income under like conditions, received in the year 1929 and subsequently, was not taxable income until the year 1934. The government not only so held, but, as we have seen, under advice of Revenue Agent Whitney, the income tax paid by plaintiff for the year 1931 on account of such bonus payments was actually tendered back to the taxpayer. The grounds upon which the Commissioner disallowed the claim for refund, and the acts of the Commissioner's office in connection with the years subsequent to 1929, indicate to this court that

there was a misconstruction of the applicable law on the part of both the Commissioner and the taxpayer.

The taxpayer did not report as income for the year 1925 bonuses received in 1925 for delivery of space in 1929. The same thing is true of the years 1926, 1927 and 1928. The Commissioner, in his 1933 examination of the taxpayer's 1931 return did not treat bonuses received in 1931, for delivery of space in 1934, as income for the year 1931.

Should the taxpayer be penalized for doing, with regard to 1925 income, what the Commissioner—with all of the facts before him—thought proper as to 1931 income? If the law, the regulations, and the current practice, with regard to the reporting of that income, were such that both the Commissioner and the taxpayer were deceived as to the proper years in which the bonuses were taxable, the contention surely cannot be made successfully that the taxpayer deceived the Commissioner.

Is the taxpayer presumed to have the ability to interpret the law more accurately than the Commissioner, so that what was the error of the Commissioner was the deceit of the taxpayer? We think the answer must be in the negative; it is of course fundamental that estoppel cannot be predicated on errors of judgment by the person asking its benefit. Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511, affirming Salvage v. Com'r, 2 Cir., 1935, 76 F.2d 112.

The original answer of the defendant pleaded an estoppel in pais but this was amended prior to the trial so that estoppel was pleaded only in general terms; and defendant has not attempted to establish the well-understood elements of an estoppel in pais. William C. Van Antwerp v. U. S., 9 Cir., supra, and cases there cited. Defendant points out—what is undoubtedly true—that unless equity intervenes it will be possible for plaintiff to evade the payment of any tax whatsoever on bonus income received prior to 1929; because the statutory period within which there may be an assessment thereon has long since expired.

We are thus squarely face to face with this question: "Where there has been no fraud or fraudulent concealment; where the Commissioner has equal knowledge with the taxpayer of the facts, or is charged with equal knowledge, may equity be invoked—whether under the doctrine of equitable estoppel or otherwise—to prevent the recovery of taxes erroneously paid on account of income received in a given year solely because taxes should have been paid by that taxpayer on income received in other years, which are now uncollectible because barred by the statute of limitations?" See suggestions in Jamieson v. United States, D.C., 10 F.Supp. 321, 15 A.F.T.R. 1428; Salvage v. Com'r, 2 Cir., 76 F.2d 112, 15 A.F.T.R. 404, affirmed Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511, 16 A.F.T.R. 1322. Many cases have closely approached this point, but in all there seems to have been some other equitable consideration which influenced the final decision.

The case of Commissioner v. Yates, 7 Cir., 86 F.2d 748, 750, affirming a decision of the Board of Tax Appeals, 32 B.T.A. 1337, states pertinently: "The Government made no charge of fraud or malfeasance in this action, and the only charge of misrepresentation is of an indirect or negative character, that is to say, it argues that the failure of respondent and her husband to disclose in their returns that they had received the involved credits in the year 1928, was tantamount to their affirmative statements that they had not received them, and thus created against respondent a quasi estoppel. We think the argument is not sound. We must concede that Congress had some purpose in enacting the statute. Obviously, it was to expedite the settlement and payment of taxes by extending to the taxpayer some assurance of finality. To adopt the construction now urged by the Government would render the statute meaningless, for so long as any item of income was omitted, however innocently, the closing agreement would have no binding effect, and the taxpayer would be in precisely the same position as he was prior to the enactment."

In Sugar Creek Coal & Mining Co. v. Com'r, which was originally reported in 30 B.T.A. 420 and reversed by the Board, sitting in bank, as reported in 31 B.T.A. 344 (which decision seems to have been recognized by the Commissioner of Internal Revenue in XIV—1 C.B. 20) the Board said:

"Estoppel is not an element of income but only a doctrine affecting liability. It

cuts across substantive principles in order to promote an assumed fairness thought to be more important than an adherence to conventional legal considerations. It does not create a right but only affects remedy. The burden is upon the party asserting it to establish both the facts relied on to support it and the necessity in fairness for its application. Helvering v. Brooklyn City R. R. Co. [2 Cir.] 72 F.2d [274] 275. This the Commissioner has assumed and undertaken. His affirmative proposition may be abstractly stated thus: A taxpayer who, for a long period of years beginning prior to 1913, annually receives taxable income and erroneously (but not fraudulently) omits it from his return and is not required by the Commissioner to pay tax thereon, although official examinations have for a number of years informed the Commissioner of the facts before the expiration of the statutory period of limitations, is estopped to deny liability for tax on the aggregate amount of such income in a single subsequent year when such income is neither received nor accrued, because the statute of limitations bars the tax for the earlier years when it was properly due.

"This proposition would operate as a complete frustration of the statute of limitations. Congress having expressly provided such a bar, the Commissioner would thrust it aside whenever it seemed to him or to the Board or the courts unfair, although there is in the act neither express nor implied exception of such a nature. This is also true of refunds of overpayments, for the Commissioner may not act merely upon his sense of fairness to allow a claim long after it is outlawed by statutory limitation. In the absence of fraud or at least of conscious deception, Congress has fixed a period of time as a limit upon collectibility and this may not give way to an elusive concept of fairness."

See discussion in 45 Yale L.J. 178—1935.

Quite frequently the courts have denied estoppel to the government when the Commissioner has checked up the facts, and sometimes when he is merely held to have had access to the facts. Brant v. Virginia Coal & Iron Co., 93 U.S. 326, 23 L.Ed. 927; Brewerton v. United States, Ct.Cl., 9 F.Supp. 503; Tide Water Oil Co. v. Com'r, 29 B.T.A. 1208; Brooklyn City Ry. Co. v. Com'r, 27 B.T.A. 77, affirmed in Helvering v. Brooklyn City R.

Co., 2 Cir., 72 F.2d 274, 14 A.F.T.R. 428; United States v. S. F. Scott & Sons, 1 Cir., 69 F.2d 728, 13 A.F.T.R. 778.

As indicated in 48 Harvard Law Review 1293, when the Commissioner is in doubt as to the proper year of tax liability, he may protect himself against error either by ruling both ways on the situation presented, irrespective of mutual inconsistency, or in ruling tentatively one way and keeping the contrasting alternative or alternatives open, through waivers or some other special arrangement. Almost invariably the Bureau can protect the government's interests provided it knows all of the facts and recognizes all the risks. As well stated also in 5 Paul & Merten's Law of Federal Income Taxation, 1937 Cum.Supp., p. 345, § 53.16: "The Commissioner is under some positive duty, where he is presented by the taxpayer with the facts, not to be completely 'passive' and sleep on his rights. He may not blindly accept returns, or create estoppel by his own failure to perform. * * * (See cases there cited and discussed.)"

We do not regard Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, as in conflict with the foregoing. Mr. Justice Stone, in McEachern, Adm'r, v. Rose, Collector, 58 S.Ct. 84, 87, 82 L.Ed. —, sums up that decision as follows: "There testamentary trustees had paid * * * income * * * tax * * * which should have been paid by the beneficiary, and it was held that they were not equitably entitled to recover the tax after the statute had barred collection from the beneficiary. The assessment of a deficiency against the trustees and the payment of it by them were not barred by limitation."

In this recent McEachern Case it was held that the equitable defense of setoff, unjust enrichment, or recoupment is not available to the government if the application of such a defense would result in crediting a later overpayment upon a barred tax liability.

It is indeed unfortunate that in this instance the plaintiff will be able to avail itself of the technical defense of the statute of limitations, in order to avoid the collection by the government of a very considerable sum in income taxes for the years 1925 to 1928, inclusive. These taxes, plaintiff at one time properly and legally owed, but no fraud or concealment has been alleged or proved by the government and we feel that the bonus receipts were

known or should have been known at all times to the Commissioner's agents. To ignore the statute would, in our judgment, produce results much more serious than any possible loss of revenue. Congress certainly had a special object in view in enacting the statute of limitations and, to accept the theory of the defendant in this case, would be to defeat the clear intent of Congress to fix a definite period of time as a limit upon collectibility of income tax.

 The taxpayer, on the one hand, has a right to know that, in the absence of fraud or of conscious deception or of conduct which is tantamount to fraud, there is a definitely limited period of time within which the government may attempt to assess any additional tax. The Commissioner, on the other hand, has a right to have a definitely limited time within which the taxpayer may successfully ask for a refund. As stated in the Sugar Creek Coal & Mining Co. v. Commissioner, supra, "These matters Congress has considered and in its legislative wisdom it has enacted the limitation period at the price of losing the tax. The administrative officer may not interpose his judgment to the contrary."

 The Supreme Court of the United States, in a suit for refund, has held that, in determining income tax liability, courts may reconsider all of the issues involved, whether previously allowed or not, for the purpose of determining whether the tax has been overpaid for the year in question. Lewis et al., Trustees, v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, 10 A.F.T.R. 773. The court held in that case that all of certain items were involved in the calculation of the tax within the year in suit; that in determining a refund the court should take into consideration all matters affecting the tax liability for the year involved; and if, as a result, a redetermination of the tax liability for that year disclosed no overpayment of tax, no refund could be had.

Consequently and in conformity with that opinion, in determining plaintiff's income tax liability for the year 1929 there should be added to the agreed taxable income for that year, in the amount of $42,988.19, the following:

Agreed taxable income $ 42,988.19
Bonuses received during 1929; 600.00
and

| | |
|---|---|
| Interest received during 1929 (in connection with contracts to deliver possession in 1929) | 13,337.42 |
| Bonuses received during 1929; and | 46,000.00 |
| Interest received during 1929 (in connection with contracts to deliver possession in 1934) | 712.74 |

Total taxable income $103,638.35

Based upon the income tax rates in effect for the year 1929 plaintiff's income tax liability on that net income amounts to $11,401.32. As plaintiff has heretofore paid to the collector of internal revenue, on account of that tax liability, the sum of $36,801.42, it is entitled to a refund of $25,400.10, together with interest as follows: Interest on the sum of $9,200.35, from December 8, 1930, interest on the sum of $9,200.35 from September 8, 1930, and interest on the sum of $6,999.40 from June 4, 1930, all at the rate of 6 per cent. per annum; together with costs of suit.

 Under the circumstances we are unwilling to reduce or wipe out plaintiff's recovery by offsetting the taxpayer's liability for any year prior to 1929. We do not believe that the Supreme Court of the United States intended by its decision in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, 15 A.F.T.R. 1069, to let the bars down to that extent. See, also, Crossett Lumber Co. v. United States, 8 Cir., 87 F.2d 930, 109 A.L.R. 1348, 18 A.F.T.R. 846. Otherwise the scope of inquiry as to possible setoffs might conceivably include all dealings over a period of years between the taxpayer and any arm of the government, and would seem to be limited only by the financial relationships between the parties. In any event, the government has not stated in the pleadings in the case at bar any specific claim for recoupment based on a claim for taxes due for the years prior to 1929. Quinn v. Smith, 49 Cal. 163; Bernard v. Mullot, 1 Cal. 368; Stoddard v. Treadwell, 26 Cal. 294, at page 305; Weaver v. Fickett, 82 Cal.App. 116, at page 121, 255 P. 257; Cullinan v. McColgan, 87 Cal. App. 684, at page 701, 263 P. 353; Pitzel v. Maier Brewing Co., 20 Cal.App. 737, at page 742, 130 P. 705, 706; C.C.P. Sec. 441; Rule 30; Courts of Equity of United States, 28 U.S.C.A. following section 723.

Judgment for plaintiff in accordance with the foregoing.